# The Union Bridge Company *et al.*

### *v.*

## Timothy J. Teehan.

*Opinion filed April 18, 1901—Rehearing denied June 7, 1901.*

1. Appeals and errors—*what matters are concluded by Appellate Court's judgment.* In an action by a servant for injuries received, whether the negligence was that of a fellow-servant or whether notice of the alleged defect in the machinery was brought home to the defendant in apt time are questions of fact, and in the absence of any complaint of erroneous rulings of law in relation to them are conclusively settled by the judgment of the Appellate Court.

2. Same—*when an instruction to find for the defendant must be refused.* If the evidence produced before the jury, with all the inferences proper to be drawn therefrom, fairly tends to prove the cause of action set out in the declaration, the court must refuse defendant's peremptory instruction to find in his favor.

*Union Bridge Co. v. Teehan,* 92 Ill. App. 259, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

O. W. Dynes, for appellants.

Edward J. Judd, for appellee.

Mr. Chief Justice Boggs delivered the opinion of the court:

The judgment in the sum of $10,000 against the appellant companies, awarded the appellee in the superior court of Cook county on the verdict of a jury, in an action on the case, as damages for injuries inflicted on the person of the appellee by reason, as alleged in the declaration, of the negligence of the appellant companies, was affirmed by the Appellate Court for the First District on appeal, and the judgment of affirmance is now before us for review on this the further appeal of said companies.

At the close of all the evidence in the trial court a motion was entered in behalf of the appellant companies for a peremptory instruction to the jury to return a verdict of not guilty, but the motion was denied. It is not complained in this court that the trial court erred in any ruling relative to the admissibility of testimony, or in granting or refusing instructions, or otherwise in any matter of law, save in refusing to grant the instruction directing a peremptory verdict in favor of the appellant companies.

Whether the alleged negligence was that of one Thomas Clayton, a fellow-servant of appellee, or whether notice of the alleged defect in the machinery whereby, as the appellee alleged, his injuries were occasioned was in apt time brought home to the appellant companies, were the subjects of conflicting testimony, and, in the absence of any complaints of erroneous rulings of law with relation to them, are questions of fact, and as such are conclusively settled adversely to the appellant companies by the action of the Appellate Court. But a single question therefore arises, namely, whether the evidence produced before the jury, with all the inferences proper to be drawn therefrom, fairly tended to prove the cause of action set out in the declaration. If such was not the state of the proof the court should have peremptorily directed the jury to return a verdict of not guilty.

The material allegations of the declaration are found in the following extract therefrom: "Plaintiff avers that it was then and there the duty of the said defendants to furnish reasonably safe and good machinery for the purpose of doing such hoisting, as aforesaid, yet said defendants, wholly unmindful of their duty in that behalf, carelessly and negligently failed to furnish reasonable and good hoisting machinery, but furnished for the conduct of the said work of erecting said elevated street railroad, defective and unfit hoisting machinery, in that a certain pin in said hoisting machinery by which was

held a certain lever, which lever operated that portion of said hoisting machinery which held the beam upon which said plaintiff then and there was, as aforesaid, was loose, worn and defective, and on account of its defective condition became unloosened and slipped out of its place and failed to hold the said lever in position in which it should have held the same, and this caused the beam upon which the said plaintiff then and there was, to be precipitated from a great height, to-wit, the height of thirty feet, and caused the said plaintiff to fall with the same."

A brief reference to the testimony is necessary. The Union Bridge Company and the Elmira Bridge Company, the appellants, were in April, 1897, engaged, on joint account, in constructing the Northwestern Elevated road, in Chicago. In the erection of the elevated structure there was used a device known as a "traveler," which consisted of certain derricks operated by a steam engine. The steam engine was in a rough board shed, and could be moved along on top of the elevated structure as the work progressed. In front of it, and at a distance of thirty or forty feet, were set certain derricks. By means of these derricks, worked by the engine, the large iron beams and columns, of which the elevated structure was to be constructed, were lifted from the ground and set in place and held there while they were being fastened. The appellee, an employee of said companies, in the regular course of his employment, on April 30, 1897, took his proper place on one of the columns about to be hoisted, for the purpose of "riding" on it to its intended place in the structure, as was his duty to do, and then fastening it in place. He was then seventy-five or eighty feet from the engine house. When the column had been hoisted about thirty or thirty-five feet in the air, suddenly the boom of the derrick gave way, and the column on which the appellee was riding, together with the boom of the derrick from which it was depending, were precipitated

to the ground. The appellee fell at the same time and sustained serious injuries. The boom was moved and controlled by a rope which passed through certain pulleys back to the machinery and was there wound around a certain part of said machinery called a "spool," or, as called by the workmen, the "nigger-head." Power from the engine was communicated to this spool by means of "clutches," one of which was attached to the machinery and the other to the journal of the spool. These clutches could be connected and power transmitted to the spool by means of a lever, or disconnected by an opposite movement of the same lever. The clutches were so constructed that a projecting square tooth or "shoulder" of the one fitted into a receptacle or notch prepared in the other to receive it, somewhat as a tenon fits into the mortise. When the lever was thrown forward the clutch attached to the journal of the spool was placed in contact with the clutch on the machinery and their parts joined and connected together so that motion was imparted to the spool. The spool was then said by the workmen to be "in gear." When the lever was drawn backward the clutches became disconnected and power from the machinery ceased to reach and operate the spool, and it was then said to be "out of gear." When so out of gear an appliance called a ratchet or "dog" was so placed as to fall into cogs or teeth and hold the spool in position, —prevent it from turning and unwinding the rope. The lever was connected with the spool clutch by an iron bar called an "arm." This arm passed between two upright iron standards. The arm was pierced by two holes passing through it and was provided with a pin attached to it by a chain, which pin was intended to hold the lever in position by being passed through the holes in the arm either in front or back of the standard, the pin resting against the standard and thus preventing the lever from moving backward or forward, as the case might be. When the lever was thrown forward, pressing the

clutches together and putting the spool in motion, the pin was thrust through the hole in the arm, which would then be immediately in front of the standard, thus holding the clutches in proper position and the machinery in gear. When the lever was thrown backward, thereby disconnecting the clutches and putting the machine out of gear, the other hole in the bar would be brought in position immediately in the rear of the standard and the pin would be thrust through that hole to prevent the lever from moving forward, connecting the clutches and putting the machinery in gear. This pin was manipulated by a workman employed by appellant companies, whose duty it was to put the machinery in and out of gear, as occasion should require, and to operate the spool and that part of the rope which passed around the spool. At the time in question one Thomas Clayton was employed for that purpose. One Frank J. Ash was at the same time engaged in operating another spool immediately in front of Clayton. The testimony of Clayton and Ash tended to establish that the pin in the lever bar which connected Clayton's spool was old and much worn, and that the jarring or vibration of the machinery would loosen it and cause it to drop out of the hole in the arm. One Fred Arcand, also a spool or "nigger-head" operator on the same occasion, testified that on a former occasion he saw this pin drop out of the hole in the arm, and that it was caused to do so by the vibration or jarring of the machinery. Other evidence tended to show the appellant companies had full notice of the condition of the pin, and there was no proof the appellee had any such notice or knowledge or was chargeable with such notice or knowledge. Clayton testified he threw the lever back, putting the spool out of gear, and placed the pin in the proper hole back of the standard to keep the lever from moving; that soon after doing this, and before the appellee was injured, he reached over the spool and felt for the pin and found it in its place; that about thirty seconds there-

after the lever bar moved suddenly forward and the clutches struck and knocked against each other but did not come together in such manner as to connect, and the clutch that was in motion forced the clutch on the journal of the spool upward and broke a cog or tooth, which impinged on the "dog" and forced the spool upward and above the "dog," and the spool thereupon revolved with great rapidity, releasing the rope which held the boom and column on which appellee was standing, and allowing the boom, column and rigging and appellee to fall together to the ground. Clayton looked at once to the lever bar, and found the pin out of the hole where he had placed it and swinging by the chain which connected it with the bar. The testimony of Ash tended to corroborate that of Clayton on material points.

The testimony of these witnesses so far tended to show the disarrangement of the machinery which caused the injury to appellee resulted from the fact the pin provided by the appellant companies to be used in the lever bar of the spool had become so worn that it was too small to retain its place in the holes in the lever bar, and was moved out of the hole in which it had been placed by Clayton by the jarring or vibration of the machinery, that in our opinion the court was justified in submitting the cause to the jury. The special findings of the jury demonstrated that the jury accepted the testimony of these witnesses as establishing the cause of the injury. These findings were, in substance, that the pin was the cause of the injury; that Clayton did not leave the pin out of the hole in the bar, but that he placed the pin in the proper hole in the bar and that it dropped or worked out of the hole.

No other questions of law are presented. The judgment is affirmed.                    *Judgment affirmed.*