## THE CHICAGO CITY RAILWAY COMPANY

*v.*

## JOHN TUOHY.

*Opinion filed April 16, 1902—Rehearing denied June 4, 1902.*

1. STREET RAILWAYS—*greater care is required at street crossings than elsewhere.* Those in charge of a street car must exercise a greater degree of care and watchfulness at street intersections than at other places along the route, and should notice whether the track is clear as they approach, and sound the gong in warning.

2. SAME—*electric cars should not be run at speed incompatible with use of highway by others.* Electric cars cannot lawfully be run at a rate of speed which is incompatible with the lawful and customary use of the street or highway by others.

3. SAME—*it is a question of fact whether motorman keeps such a lookout as circumstances demand.* It is a question of fact for the jury whether a motorman keeps such a lookout as the circumstances demand, or gives such warning of approach as is necessary when he discovers that a child is upon the track or approaching it, and the fact that the car runs an unusual distance before it stops is some evidence of improper management.

4. SAME—*motorman should use high degree of care to prevent injuring child.* If a young child is discovered approaching the track with the apparent intention of crossing in front of a moving car, or is discovered on the track, it is the duty of the motorman to use a high degree of care to prevent injuring him.

5. SAME—*what sufficient to go to jury on question of company's negligence.* Evidence that the plaintiff, a child of tender years, was backing from the sidewalk to the car track talking to a companion, and in full view of the motorman on a car approaching the crossing at a high rate of speed without giving warning of its approach, is sufficient to warrant a submission of the case to the jury. (*Rack* v. *Chicago City Railway Co.* 173 Ill. 289, distinguished.)

6. INFANTS—*child under seven years of age is not chargeable with contributory negligence.* Up to the age of seven years a child is incapable of such conduct as will constitute contributory negligence, and the court may so declare, as a matter of law, in its instructions.

7. SAME—*alleged admission of young child should be received with great caution.* Alleged admissions of a child of tender years as to the manner in which he received his injury should be received with greater caution than admissions of adults, and the jury should weigh them with reference to his age and understanding.

*Chicago City Railway Co.* v. *Tuohy,* 95 Ill. App. 314, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is an action on the case, begun on February 24, 1896, by the appellee against the appellant company to recover damages for a personal injury. The trial in the circuit court resulted in verdict and judgment in favor of appellee. This judgment has been affirmed by the Appellate Court. The present appeal is prosecuted from such judgment of affirmance.

The appellee, a boy between five and six years of age, was on April 17, 1895, struck by one of the electric cars of the appellant company on Thirty-fifth street in the city of Chicago, near the corner of Wood street. The car ran over the appellee and crushed his leg in such a way that it had to be amputated at a point about one-third below the knee. Thirty-fifth street runs east and west, and Wood street runs north and south. When the injury occurred, the car, which struck the appellee, was coming from the west and going east on Thirty-fifth street. The evidence tends to show, that the injury occurred about twenty feet east of the crossing or intersection of Wood street with Thirty-fifth street. The next street west of Wood street, running north and south, which crosses Thirty-fifth street, is Honore street, and the next street west of Honore street, running north and south, which crosses Thirty-fifth street, is Lincoln street. The next street east of Wood street, running north and south, and which crosses Thirty-fifth street, is Hermitage avenue.

WILLIAM J. HYNES, SAMUEL S. PAGE, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant.

ALTGELD, DARROW & THOMPSON, and P. A. HINES, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—At the close of the evidence of appellee, the plaintiff below, the appellant, defendant below, asked the court to give the jury a written instruction to return a verdict of not guilty. This instruction was refused, and exception was taken to such refusal. At the close of all the testimony in the case, the defendant below again presented to the court a written instruction directing the jury to return a verdict of not guilty, and asked the court to give such instruction. The court refused to do so, and exception was taken to such refusal. The question is thus raised whether or not the evidence justified the court in submitting the case to the jury. Where the evidence before the jury, with all the inferences proper to be drawn therefrom, tends to prove the cause of action set out in the declaration, the court should not peremptorily direct the jury to return a verdict of not guilty. (*Union Bridge Co.* v. *Teehan,* 190 Ill. 374).

The cars of the appellant upon Thirty-fifth street were propelled by electricity by means of electric wires strung overhead, and were known as trolly cars. There were two tracks laid in Thirty-fifth street, the cars going east running upon the south track, and the cars going west running upon the north track. The car, which inflicted the injury, had stopped at Lincoln street, two blocks west of Wood street, to take on a passenger, but after that did not stop until it passed beyond Wood street to the point where the appellee was injured. Just before the accident the appellee was standing in company with another boy eleven years old, named Thomas Bonner, near the intersection of Wood street and Thirty-fifth street on the south side of Thirty-fifth street, and near the corner made by the intersection therewith of Wood street. The sidewalk was about fourteen feet wide between the curb and the building line of the houses fronting upon the street.

The space between the curb at the edge of the sidewalk and the south rail of appellant's south track was about twelve feet. At that time appellee lived with his father and mother on Thirty-fourth court near the corner of an alley west of Wood street, and not much farther than a block or ,a block and a half from where the accident occurred. The boy, Thomas Bonner, lived with his father on Wood street about a block and a half from where the appellee lived. Frank Bonner, the father of Thomas Bonner, was a lamp-lighter in the employ of Michael J. Tuohy, appellee's father. The accident occurred about five o'clock in the afternoon. There was a lamp-post about eighty-two feet east from the south-east corner of Wood and Thirty-fifth streets. Frank Bonner had sent his son, the boy Thomas Bonner, to the house of appellee's father to get a filler of oil for the purpose of filling some of the street lamps. Upon going to the house of appellee's father to get the oil, appellee asked permission to accompany Thomas Bonner, and his mother permitted him to do so. They went south and crossed the tracks, and stood near the corner of Wood and Thirty-fifth streets on the south side of Thirty-fifth street while Frank Bonner, the father, was lighting the lamp, distant eighty-two feet from the corner, or thereabouts. Frank Bonner had requested the boys to stand at the corner until he finished lighting the lamp. There is testimony in the record, tending to prove that the car, which caused the injury, was traveling at an unusually high rate of speed, that is to say, from fourteen to sixteen miles an hour, according to the testimony of some of the witnesses. There is also evidence, tending to show that no bell was rung or gong sounded upon the approach of the car to the street crossing.

It is incumbent upon those in control of a street car to exercise a greater degree of care or watchfulness at street intersections than at other places along the route. (Booth on Street Railways, sec. 306; *West Chicago Street*

*Railroad Co.* v. *McCallum,* 169 Ill. 240; *Chicago City Railway Co.* v. *Robinson,* 127 id. 9). Drivers, gripmen and motormen of street cars, are obliged at all times to exercise reasonable care in the conduct of their cars, but the requirement of reasonable care imposes upon them a more exacting attention when they approach street crossings in a crowded city where vehicles and pedestrians may always be expected in front of them. "The failure under such circumstances to ring the bell, sound the gong, or give other proper warning * * * is undoubtedly evidence of negligence to be submitted to a jury under all the circumstances," whether there is an ordinance requiring such precautions or not. The increase of danger to the public at such crossings demands a corresponding increase of vigilance and energy on the part of such drivers, gripmen and motormen. They ought to notice whether or not the track is clear when they approach such public crossings, and sound the gong as warning. (2 Thompson on the Law of Negligence, secs. 1399-1401).

Counsel for appellant insist that the appellee was not at the crossing. While this may be strictly and technically a correct statement of the facts, yet the evidence tends to show that the appellee was struck only about twenty feet east of the crossing, and so near thereto as to have required a slackening of the speed of the car. The evidence tends to show that the boys had been instructed by the father of one of them to stand at the corner until he had finished lighting his lamp, and, while they may have moved a short distance east of the corner, they were near enough thereto to demand of the appellant the exercise of the care required in propelling its cars across a street crossing.

Even, however, if the party injured was not sufficiently near the crossing to justify the application of the increased vigilance required of a street car company in approaching a crossing, yet there is evidence tending to show that the speed of the train was unreasonable and

dangerous. Street cars propelled by electricity cannot be lawfully run at a rate of speed which is incompatible with the lawful and customary use of the highway by others. Here, the appellee had as much right to be upon the street as the appellant. (2 Thompson on the Law of Negligence, sec. 1395). A street railway company has no property interest in the street, and, therefore, no right to run its cars at a rate of speed which will interfere with the customary use of the street by others of the public with safety. Such cars can be more readily and quickly stopped than the train of an ordinary railroad. Where the motorman or gripman runs his car at such a rate of speed that he is prevented from keeping control of it, so as to stop it within a reasonable distance upon an appearance of danger to others, the rate of speed, at which he propels the car, is to be deemed unreasonable or dangerous. It has been held that, where an electric car was running at the rate of ten or eleven miles an hour over a crossing in a much frequented street without giving any signal, there was such evidence of negligence as justified a submission of the case to a jury. (2 Thompson on the Law of Negligence, secs. 1395-1397).

The evidence in the case tends to show that, when Frank Bonner had finished lighting the lamp and came down from the ladder, the appellee, with his face towards the track, stepped down from the curbing at the edge of the sidewalk to the street, and then turned around, and while backing towards the north-west and towards the south track, he talked with the other boy standing upon the sidewalk or curb with his oil can. While he was thus backing towards the track, the train was coming at an unusually high rate of speed. The boy, Thomas Bonner, says that the appellee had reached the south rail of the track and had his foot over it when he, the witness, discovered that the train was about to strike the appellee. Thomas Bonner then says that he hallooed to appellee to look out, and went forward to pull him away from the

car; that the car was within fifteen feet of the appellee before witness saw the car; that he did not see the car until it had advanced about five feet beyond the crossing. He also says that, when he called to appellee to look out, and advanced towards him, appellee tried to cross the rail and come back, but was struck before he succeeded in doing so. The evidence also tends to show that, when the car stopped, it had probably passed the boy by about seventy-five feet.

It is a question of fact for the jury whether the gripman or motorman on such a car keeps such a lookout as the circumstances demand, or gives such warning of approach as is necessary when he discovers that a child is upon the car track or approaching it; and the circumstance, that the car has run an unusual distance before it stops, is some evidence of improper management. (*Roberts* v. *Spokane Street Railway Co.* 54 L. R. A. 190.) When a young child is discovered approaching the car track with the apparent intention of crossing in front of a moving car, or is discovered on the track, it is certainly the duty of the gripman or motorman to exercise a high degree of diligence in order to prevent injury to the child. (2 Thompson on the Law of Negligence, sec. 1424; *San-Antonio Street Railway Co.* v. *Mechler*, 87 Tex. 628). A verdict in favor of the plaintiff will not be disturbed, where it appears that a street car approaches a street crossing at a very fast rate of speed without any alarm while a boy is standing on the track in full view of the motorman, or standing in the center of the track with his back towards the car. (2 Thompson on the Law of Negligence, sec. 1425).

In the case of *Rack* v. *Chicago City Railway Co.* 173 Ill. 289, it appeared that the boy there injured was standing in the roadway, and not, as here, approaching the car with his back towards it. It also appeared in the *Rack case* that the gong was rung while the train was passing over the crossing. In that case, there was no testimony

tending to contradict the gripman in reference to the circumstances there referred to.   In the case at bar, however, there was not only evidence tending to show that the appellee was approaching the car, and that, too, with his back turned towards it, but there was also evidence, tending to show that no bell was rung or other warning given to the appellee of the approach of the car.   In these respects the *Rack case* is distinguishable from the case at bar.

After Frank Bonner had lighted the lamp and descended by means of his ladder, he stood upon the sidewalk talking with a man, named Gillen.  He and his son, Thomas Bonner, and Gillen were witnesses of the accident and testified to what they saw in behalf of appellee. The only witness on behalf of the appellant, who saw the accident, was the motorman, whose deposition was taken in a distant State and read upon the trial.   Appellant sought upon the trial to discredit the testimony of the appellee's witnesses by introducing evidence, tending to show that such witnesses had made different statements in regard to the facts from those testified to upon the trial.   It appears that, a day or two after the accident, the appellant sent parties to appellee's witnesses to interview them, and at a subsequent day procured the attendance of these witnesses at the office of appellant's attorney, and took down their statements.   Upon the latter occasion, it would appear that such statements were taken down, so far as they were taken down at all, by a stenographer.   But upon the occasion immediately following the accident, no stenographer was present, but two representatives of the company were present, one of them asking questions in the presence of the other. The questioner made notes of the answers, and, when he returned to his office, he dictated these notes to a shorthand reporter, and he and his companion then signed the reporter's notes.   The statements thus alleged to have been made by the plaintiff's witnesses were proven, and

sought to be proven upon the trial, as contradictory of their testimony. Whether or not the witnesses were contradicted in this way was a matter for the jury to determine. The jury were the judges of the credibility of the witnesses.

It is true that the witnesses, introduced by the appellant, contradicted the witnesses introduced by appellee. The evidence of appellant tended to show that the car was not proceeding at an unusual rate of speed, and that the gong was sounded and due warning given, and that the appellee attempted to run across the track as the train was approaching, with his face towards the track. Whether the witnesses of appellant were more worthy of credit than those of appellee was a matter for the jury to decide. So far as we are concerned, the judgments of the circuit and Appellate Courts are conclusive upon the questions of fact. If the jury believed that the car, which injured appellee, was proceeding across Wood street at its intersection with Thirty-fifth street at an unreasonable and dangerous rate of speed, and without giving any signal of warning to those crossing the street at that point, and if the jury further believed that, under all the circumstances, the motorman saw, or ought to have seen, the appellee approaching the track, and, if he had kept a proper lookout, could have avoided striking him, then the verdict of the jury was correct. All that we decide upon this branch of the case is, that there was testimony enough tending to show negligence on the part of the appellant company to justify the submission of the matter to the jury.

*Second*—Appellant complains that the trial court erred in the giving and refusal of certain instructions. The second instruction, given for the appellee, is complained of by the appellant, and is as follows:

"The court further instructs the jury that, if they believe from the evidence that the plaintiff at the time of the accident was a child between the age of five and six

years, then he cannot, because of his tender years, be guilty of, or be charged with, carelessness or negligence in respect to the accident in this case, so as to relieve at all any want of due care on the part of the railroad company, so that, if the jury further believe from the evidence that the accident causing the injury to plaintiff was due to the want of due and ordinary care by the defendant railroad, then you must find a verdict for the plaintiff, and no want of care by the plaintiff will save the defendant from liability for the accident."

The instruction, numbered 24 given by the court for appellant, told the jury that the burden was upon the plaintiff, appellee here, "to prove that he was exercising due care for his own safety at the time of the alleged injury." Instruction numbered 46 given for the appellant, as modified by the court, told the jury that the plaintiff could not recover at all unless he established by a preponderance of all the evidence "either that the plaintiff was too young to be charged with carelessness under these instructions, or else that the plaintiff did not in any way contribute to the injury by any want of ordinary care, prudence, vigilance and caution for his own safety or to avoid the accident on the occasion in question." By instruction numbered 47, as modified and given for the appellant, the court told the jury that the plaintiff must prove by a preponderance of all the evidence in the case that he "at the time in question was too young to be charged with carelessness under these instructions, or that he was in the exercise of due care, caution, prudence and vigilance for his own safety." The instructions upon this subject, thus given for the appellee and for the appellant were, to a certain extent, contradictory of each other. Instruction numbered 2 given for the appellee told the jury in substance that the appellee could not be charged with negligence because of his tender years, while the instructions given for the appellant told the jury that the appellee was chargeable with ordinary

care for his own safety. This contradiction, however, could have done appellant no harm if the second instruction given for appellee was correct, or harmless. The other instructions were in appellant's favor.

It is a general rule of law, that children of tender years are not deemed, in law, imputable with contributory negligence. This rule is based upon the fact that they are not capable of care. But at what age children are to be deemed *sui juris*, so as to be capable of contributory negligence, and at what age they are to be deemed *non sui juris* so as to be incapable of contributory negligence, is a question of much difficulty and about which the authorities are strangely in conflict. If a child is of such tender years that he is conclusively presumed incapable of judgment and discretion and of owing duty to another, contributory negligence on his part cannot be set up to defeat recovery. At what age is a child to be considered of such tender years that this conclusive presumption arises? In the case at bar, the proof shows that the accident occurred on April 17, 1895, and that the appellee became six years of age on the second day of June following, so that he lacked six weeks of being six years of age when he was injured.

In *Chicago City Railway Co.* v. *Wilcox*, 138 Ill. 370, where the child injured was only six years of age, the court gave to the jury an instruction that negligence could not be imputed to him on account of his age. In that case we said (p. 382): "The application of the doctrine of contributory negligence to the conduct of young children is a difficult one, and very naturally had led to a considerable difference of opinion. The two opposing views most commonly met with are, first, that up to a certain age, the precise limit of which is not and perhaps cannot be well defined, a child is incapable of such conduct as will constitute contributory negligence, and that the court may so declare as a matter of law. The rule thus contended for is sometimes said to be analogous to the rule of the

common law which exempts children under seven years
of age from criminal responsibility.    It has accordingly
been held that children of eighteen months, of two years,
of two years and ten months, of four years, under five
years, of five years, of six years, under seven years, and
even seven years of age, are incapable of such negli-
gence. (Bishop's Non-Contract Law, sec. 586, and authori-
ties cited.)    This rule seems to have been recognized in
this State with more or less distinctness in the following
cases."    Seven cases decided by this court are then re-
ferred to.

In *Chicago City Railway Co.* v. *Wilcox, supra,* the court
proceeds further to say: "The other view is, that young
children are bound to use such care and such care only
as is usually exercised by children of the same age and
degree of intelligence, and that it is always therefore a
question of fact to be determined by the jury whether, in
a given case, the child is in the exercise of proper care,
his tender years, his intelligence or the want of it, and
all the circumstances by which he was surrounded being
taken into account.    Under this rule, as is claimed, it can
never be laid down as a matter of law, that any child,
however young, is incapable of contributory negligence,
it being always a question of fact for the jury.    The fol-
lowing cases are referred to as giving some support to
this rule."    The court then refers to four cases decided
by this court.

In *Chicago City Railway Co.* v. *Wilcox, supra,* it was
not determined which of the two rules above mentioned
should be adopted, but the court held, for certain reasons
there set forth, that the instruction given, even if it em-
bodied an incorrect proposition of law, could not have
materially prejudiced the party complaining of it, and
therefore the judgment in favor of Wilcox was not dis-
turbed.    It was there said (p. 385): "Whether the instruc-
tion then was or was not correct in holding that, on
account of the plaintiff's tender age, negligence could

not be attributed to him, it manifestly did no harm, as the jury could not have found otherwise than they did on that question if the instruction had not been given, or if the contributory negligence of the plaintiff had been submitted to them as a question of fact."

We are of the opinion upon further consideration that, where the testimony shows that a child is only six years old or less, he is incapable of such conduct as will constitute contributory negligence. In other words, a child of the age of only six years or under is exempt from responsibility in the matter of contributory negligence, and so far as the exercise of due care for his own safety is concerned.

In *Chicago and Alton Railroad Co.* v. *Gregory*, 58 Ill. 226, the child injured was not quite five years old, and it was held that negligence could not be imputed to a child of such tender years. In *City of Chicago* v. *Hesing*, 83 Ill. 204, the child was less than four years old, and it was there held that he was too young to observe any care for his personal safety. In *Chicago and Alton Railroad Co.* v. *Becker*, 84 Ill. 483, the child was between six and seven years of age, and it was there said that a general rule as to negligence "cannot be applied to a case where the person injured is an infant of such tender age that the requisite capacity to exercise proper care and discretion is wanting. While the deceased was, no doubt, possessed of ordinary intelligence, and was as capable of using as much caution for his safety as other boys of his age, yet it is not to be expected of a boy between six and seven years of age, that the same caution and care will be used, for personal safety, as will be exercised by a person of mature age, and the law will not impute negligence to an infant of such tender years. * * * We are, therefore, of opinion * * * that the deceased could not be required to use as much care and caution as one older in years, and hence negligence was not to be imputed to him." In *Gavin* v. *City of Chicago*, 97 Ill. 66, the plaintiff

was only four years old, and we there said, "of course he was too young to exercise any care for his personal safety." In *Toledo, Wabash and Western Railway Co.* v. *Grable,* 88 Ill. 441, we said: "The intestate, at the time of her death, was only twenty-eight months old and of course she was too young to exercise any care for her personal safety." In *Chicago, St. Louis and Pittsburg Railroad Co.* v. *Welsh,* 118 Ill. 572, the plaintiff injured was at the time of the happening of the accident seven years and three months old, and we there said: "It is obvious, plaintiff was too young, at the time she was injured, to observe any care for her personal safety." In *Chicago West Division Railway Co.* v. *Ryan,* 131 Ill. 474, where the child injured was not quite seventeen months old, we said: "The child was so young, that it was incapable of exercising care, and cannot be charged with negligence."

In view of the authorities in our own State which are quoted as above, we are certainly justified in holding the proposition hereinbefore stated to be correct, namely, that a child only six years old or under is incapable of exercising care for his own safety, so that negligence cannot be imputed to him. The case of *Chicago and Alton Railroad Co.* v. *Becker,* 76 Ill. 25, is referred to as holding a contrary doctrine, but in that very case, which came before us a second time and is reported as *Chicago and Alton Railroad Co.* v. *Becker,* 84 Ill. 483, we said that a boy between six and seven years of age was of such tender age that the law would not impute negligence to him. The case of *Chicago and Alton Railroad Co.* v. *Murray,* 62 Ill. 326, is also referred to in support of the contention of appellant, but in that case the child injured was seven and one-half years old. In *Kerr* v. *Forgue,* 54 Ill. 482, the child injured was about twelve years old. In *Chicago, Rock Island and Pacific Railway Co.* v. *Eininger,* 114 Ill. 79, there was no evidence as to the age of the child injured, it being there expressly said: "There was no evidence as to the age or capacity or discretion of the

plaintiff introduced, more than that witnesses spoke of him as a little boy."

The doctrine, that negligence cannot be imputed to a child six years old and under, is supported by other than Illinois authorities. In *Walbridge* v. *Railway Co.* 190 Pa. St. 274, the child injured was only six years of age, and in that case the Supreme Court of Pennsylvania say: "Our consideration of the testimony has led us to the conclusion that the case could not have been thus withdrawn from the jury. There was sufficient evidence to carry the case to them on the question of defendant company's negligence, and that was the only question of fact in the case, aside from the amount of damages that should be awarded in case it was determined that the injury was the result of defendant's negligence. The question of contributory negligence was not in the case, because the plaintiff was only six years of age at the time he was injured." In the latter case, the company, against whom the suit was brought, was the Schuylkill Electric Railway Company, and the court further say: "It might be fairly inferred from the testimony that the car was running at an unusual and excessive rate of speed, that no gong was sounded or other warning given, and that the car could have been stopped in ample time to prevent the accident, if proper caution had been taken. Such inferences from proved facts were for the jury, and not for the court, and the case was rightly submitted to them."

In *Mackey* v. *City of Vicksburg*, 64 Miss. 779, the action was brought by an infant of six years to recover damages for an injury, and the court there say: "It cannot be inferred, as matter of law, that the plaintiff, an infant of six years, could be guilty of contributory negligence. * * * There is certainly no presumption of law that an infant of his age is capable of even the slight degree of care and prudence, the absence of which in an adult would be the grossest negligence."

In *Central Trust Co.* v. *Wabash, St. Louis and Pacific Railway Co.* 31 Fed. Rep. 246, which was a claim in behalf of a boy about six years old, whose foot had been crushed in such a way as to necessitate amputation, the court say: "The boy being only six years old, no negligence can be imputed to him. Therefore, the issue of contributory negligence is not in the case." In *Gunn* v. *Ohio River Railroad Co.* 42 W. Va. 676, two little boys, Henry C. Mayes not quite five years old, and Luelza Mayes, about six years old, were killed by a train on the Ohio River railroad, and a suit was brought by the administrator of Henry C. Mayes against the railroad company to recover damages for his death; and it was there said: "If Henry C. Mayes had been an adult, no recovery could be had for his death, as he met his sad and early death on the railroad track, and the defense of contributory negligence would defeat recovery, but a child of the tender years of this child is not chargeable with contributory negligence for want of judgment, discretion and presence of mind to know and avoid danger." (*Dicken* v. *Liverpool Salt and Coal Co.* 41 W. Va. 518; *Erie Passenger Railway Co.* v. *Schuster*, 113 Pa. St. 415; *Summers* v. *Brewing Co.* 143 id. 115; 1 Thompson on the Law of Negligence, sec. 310, and cases cited in note 95.)

In the present case, however, there was no evidence tending to show that the appellee was a boy of sufficient intelligence or capacity to exercise any care for his own safety. The proof shows, that he lived only a block and a half from the house of his little friend, Thomas Bonner, eleven years old, and the son of his father's employe, Frank Bonner. His mother swears that she never allowed him to go alone to the house of Frank Bonner, only a block and a half distant. Appellant relies upon the fact, that he was allowed to go to school at a public school at the corner of Lincoln and Thirty-fifth streets. His mother says that he had been in the habit of going to that school

for more than a month, and, in order to reach the school, it was necessary for him to cross the tracks. It appears, however, that the school was only a short distance from his home, not more than about two blocks distant. His mother says, when asked: "This school you speak of was how many blocks from your house?" Ans. "I should think it was a block and a half." The proof does not show conclusively that the boy went to school alone. He had a sister older than himself. Whether she accompanied him to and from school does not appear, but it does appear that he was not allowed to go alone to the house of Thomas Bonner, and it is a natural inference that he was not permitted to go to and from school alone. It appears from the evidence, that the cars of the appellant ran by the school house in question where the appellee attended school, and which was at the corner of Lincoln and Thirty-fifth streets. The law demands "greater care and vigilance in running an electric car over a public street crossing, which is much frequented by children going to and returning from school, at a time when they may reasonably be expected to be using the crossing, than is demanded at other places." (2 Thompson on the Law of Negligence, sec. 1424; *Wallace* v. *Railway Co.* 26 Ore. 174). The presumption is that, in passing the school in question, the cars of the appellant obeyed the law which demands greater care in view of the crossing of the street at that point by children going to school. It does not follow, therefore, that, in going to this school every day, which was so short a distance from his home, the boy was running the same dangerous risk as he would run in crossing the track at any other point. He was protected by the fact that other children passed to and fro with him over the tracks in going to and from school. Appellant lays stress upon the case of *Chicago, Rock Island and Pacific Railway Co.* v. *Eininger, supra,* where it appeared that the boy, who was injured, was permitted by his parents to attend school. But, there, it is stated that

the school was "at a considerable distance from home," while here the school was only a block and a half or two blocks from the home of the appellee.    Moreover, the boy in the *Eininger case* was upon the private right of way of a steam railroad company, and was charged by the company with attempting wrongfully to climb upon the train.    It not appearing what the age of the boy Eininger was, so far as is shown to the contrary he may have been much older than six years.    Hence, that case has no application.    We are of the opinion that there was no error in giving the second instruction, and hold, in analogy to the rule of the common law, which exempts children under seven years of age from criminal respon-sibility, that up to the age of seven years "a child is in-capable of such conduct as will constitute contributory negligence, and that the court may so declare as a mat-ter of law." (*Chicago City Railway Co.* v. *Wilcox, supra*). The rule has its basis in the well known immaturity of a child of such tender years.

But, even if the second instruction given for the ap-pellee was incorrect, it may be said here, as it was said in the case of *Chicago City Railway Co.* v. *Wilcox, supra,* that the instruction did no harm, as the jury could not have found otherwise than they did if the instruction had not been given.    There is no evidence to show that appellee did not exercise such care and caution as might be ex-pected of a boy of his age, or that he was guilty of any negligence such as could be charged to a boy of his age. Even Thomas Bonner, who was eleven years old, did not know of the approach of the train or hear it coming until it had passed five feet beyond the crossing, and there is nothing to show that the appellee saw the train, or that it was in any way brought to his attention before it struck him.    Therefore, we agree with the Appellate Court when they say, in their opinion deciding this case, "that it does not affirmatively appear from the evidence that appellee was not in the exercise of such care as is

usually exercised by, and might be expected from, children of the same age and degree of intelligence, and the jury would not have been warranted in so finding had the question been expressly submitted to them. The instruction complained of was not at least harmful in that respect."

*Third*—Appellant complains of the third instruction given by the court for appellee, which is as follows:

"The court further instructs the jury that a street railroad company, while using the highway, must have due regard for the safety of others and use every reasonable effort to avoid injury to others."

It is insisted that by this instruction the jury were informed that, in using the highway, appellant was bound to do all that human skill, care, vigilance and foresight reasonably could do. We do not think that the instruction is capable of any such construction. The instruction merely required the appellant to use ordinary care to avoid injury to others. The word "every" does not mean that the company should use all possible effort to avoid injury to others. The use of the word "reasonable" makes such a construction unnatural. Although the language used in the instruction may not have been wisely selected, yet any apparent defect in it was cured and remedied by other instructions which were given. By the fourteenth instruction given for the appellant, the court instructed the jury "that the motorman in question, on the occasion in question, was not bound to use the highest degree of care and caution possible to avoid injuring children or other persons upon the street or approaching or crossing the tracks where the defendant was running its cars, but he was, in law, only required to use ordinary and reasonable care, under all the circumstances, to avoid such injury." Other instructions, given for appellant, told the jury that the motorman was only obliged to exercise reasonable and ordinary diligence and care to avoid injury to the plaintiff. Inasmuch as any obscurity in the ex-

pressions used in the instruction complained of was thus explained and cured, the instruction cannot be regarded as sufficiently erroneous to make the giving of it a ground for a reversal of the judgment.

*Fourth*—Complaint is also made of the sixth instruction, given on behalf of appellee, which reads as follows:

"The jury are instructed that, in considering the credibility of witnesses and in determining the worth of their testimony, they can take into consideration the fact that a witness is in the employ of defendant railroad company, and also his connection, if any, with the accident causing the injury complained of, taking the same in connection with all the other evidence in this case."

The charge, made against this instruction, is that it singles out the employes of defendant who are witnesses, and directs the special attention of the jury to their testimony. The instructions, given on both sides, are to be considered all together and as one charge. The sixth instruction, given for appellee, must be read in connection with instruction numbered 34, given for appellant, which is as follows:

"The court instructs you that by law the employes of the defendant company are competent witnesses in the case, and you have no right to arbitrarily reject any of their testimony merely because they are such employes, but it is your duty to receive, consider and weigh the same in connection with all the other testimony and circumstances and evidence in the case."

Again, instruction numbered 27, given for appellant, reads as follows:

"If you believe from the evidence that any witness who has testified in this case is interested in the result of this suit, as a party or otherwise, then, in determining the credit to be given to such witness, the jury may take into consideration such interest as the evidence shows such witness has together with all the other facts and circumstances disclosed by the evidence, if any, which

will aid the jury in arriving at and determining the credit to which the testimony of such witness is entitled."

If any defect existed in appellee's sixth instruction it was cured by the instructions so given for the appellant. In *West Chicago Street Railroad Co.* v. *Estep*, 162 Ill. 130, the following instruction was held to state a correct proposition of law, to-wit: "The jury are instructed that while the law permits a plaintiff in a case to testify on his own behalf, nevertheless the jury have a right, in weighing his evidence and determining how much credence is to be given to it, to take into consideration that he is the plaintiff, and his interest in the result of the suit." (See also *West Chicago Street Railroad Co.* v. *Nash*, 166 Ill. 528; *Chicago City Railway Co.* v. *Mager*, 185 id. 336).

*Fifth*—This case was tried in 1899, four years after the accident happened and after the appellee had reached the age of ten years. The appellee was placed upon the stand, and when asked how he was hurt stated that he did not remember. Appellant placed upon the stand a number of boys, to prove that the appellee made certain statements to them as to how he received the injury in answer to questions by them as to the cause of his having lost his leg. In other words, it was sought to prove admissions made by the appellee contrary to his statement that he could not remember how he was hurt. Many of the admissions thus proven as having been made by him were merely to the effect that he was playing in the street and went across the car tracks and saw no car, and in that way his leg was cut off In view of this class of admissions proven by the appellant, the appellee asked and the court gave to the jury an instruction stating to them "that the admissions of a child of the tender age of plaintiff at the time of the admissions, if any are proved, should be received more cautiously on account of his age than the admissions of an adult, and the jury should weigh them with reference to his age and understanding; in other words, that even while admissions of

an adult are received with great care and caution, those of an infant of the age of plaintiff at the time of the admissions must be received with still greater care and caution on account of his tender years and understanding at the time of the admissions." We see no objection to this instruction. An admission, if it is legally an admission, must be made by some one legally capable of making the same. The fact, about which the child was questioned by these boys, occurred when he was less than six years of age, and his rights certainly ought not to be taken away by childish prattle indulged in by him when trying to explain the cause of the injury received by him.

*Sixth*—Some other objections are made as to the refusal of instructions asked by appellant, and as to the admission and exclusion of evidence. But these objections are not of sufficient importance to deserve discussion. Sixty-one instructions were asked by appellant, most of which were given; and those, which were given, covered almost every phase of the case as presented by the evidence. Appellant's attorneys asked the mother of appellee some questions as to what instructions she gave to the appellee in regard to crossing the tracks; but the exclusion of this evidence worked no harm to the appellant, as many of the questions asked were immaterial and were not proper cross-examination. The child was not responsible for the acts of the mother, and, under the doctrine laid down in *Chicago City Railway Co.* v. *Wilcox, supra,* the negligence of the parent of a child of tender years, who is injured by the negligence of another, can not be imputed to the child, so as to support the defense of contributory negligence to his suit for damages.

We discover no error in the record which would justify a reversal of the judgment.

Accordingly, the judgment of the Appellate Court is affirmed.                                          *Judgment affirmed.*