## Ernest H. Smiley, Administrator, Appellee, v. East St. Louis and Suburban Railway Company, Appellant.

1. NEGLIGENCE—*excessive speed.* *Held,* that where the proofs warranted the jury in believing that an interurban car approached a street crossing at a speed in excess of that permitted by the ordinance of the city, and that no signal of its approach was given, a verdict finding negligence would not be disturbed.

2. CONTRIBUTORY NEGLIGENCE—*how question determined.* The question of whether a person at the time of his injury or death was guilty of contributory negligence is one of fact to be determined by the jury under the evidence and proper instructions of the court.

3. INSTRUCTIONS—*failure to define particular phrase.* *Held,* that the giving of an instruction was not error because of its failure to de-

fine the phrase ''lawful use of the street''—such phrase not being defined in other instructions given.

4. DAMAGES—*when presumed in death case.* In an action for death caused by wrongful act, damages are presumed in law where the deceased left a mother surviving.

5. VERDICTS—*when not excessive.* *Held,* in a death case, that a verdict for $5,000 was not excessive where it appeared that the deceased left a surviving mother to whose support the evidence tended to show he, to some extent, contributed.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair county; the HON. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912. Rehearing denied April 6, 1912.

BARTHEL, FARMER & KLINGEL, for appellant.

F. J. TECKLENBERG and D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought this suit to recover damages for the benefit of the next of kin of his intestate, John C. Louden, who was killed by one of appellant's cars at the intersection of Horner and Second streets in Lebanon, Illinois.

There were three counts in the declaration, the first of which charged that appellant so negligently and carelessly operated, controlled, managed and ran one of its cars across Second street, in said city, that it was driven against an automobile in which Louden was passing along and he was thereby thrown out and killed. The second, that appellant was operating its car at a high and dangerous rate of speed without ringing a bell, sounding a whistle or giving other reasonable notice of its approach to the crossing. The third, that the car was running at a speed in violation of the ordinance of the city of Lebanon, limiting the speed of cars to ten miles an hour.

There was a plea of the general issue and a verdict

and judgment in favor of appellee for $5,000.

Appellant contends that the proofs do not support the verdict, for the reason that they do not show it was guilty of the negligence charged in the declaration and do show that appellee's intestate was guilty of contributory negligence at the time he was injured; that the court erred in giving instructions on behalf of appellee and that the verdict is excessive.

On June 14, 1910, as is disclosed by the proofs, appellant was operating a line of electric cars between the cities of Lebanon and East St. Louis. From its eastern terminus, its tracks ran in a westerly direction for several blocks and then turned south through a narrow street about 20 feet wide, called Horner street. From the point where the railway track turned into Horner street, there was a down grade towards the south to or beyond Second street which Horner street crossed two blocks from the turn. At the intersection of these streets the view of the cars coming south on Horner street was somewhat obstructed by houses built at and near that point. John C. Louden, an unmarried man 42 years of age, lived in Lebanon with his mother and an unmarried sister, was postmaster of the city and also engaged in other business. He had lived in Lebanon nearly all his life and was acquainted with the city and its surroundings. On the evening of the day in question, he started from his home a block or two west of the intersection of Horner and Second streets, east on the latter street towards appellant's tracks, riding in a Brush Runabout automobile, weighing 800 or 900 pounds, going at the rate of four or five miles an hour. On the south side of Second street near its intersection with Horner was located a house some 35 or 40 feet west of appellant's track with a porch on the north side of it. At the northwest corner of the intersection of the two streets, was a house, the east line of which was only 20½ feet west of appellant's track

and it was necessary to get near enough to the car track to look to the east of this house to see a car coming down Horner street from the north. As Louden approached the crossing and was passing this house a neighbor and acquaintance, Herbert H. Swears, who was sitting on the porch, called to him in a loud voice saying "The car is coming, Buck." Louden looked up at him, smiled, waved his hand and went on. Whether Louden understood what Swears said to him or simply took his call as a salutation, could not be known but he seemed to slow the car down a little though he did not stop. His automobile went on to the track where it was struck by appellant's car and he was so badly injured that he lived but a short time.

At just what rate appellant's car was traveling at the time it struck the automobile was a question upon which the witnesses did not agree. Several witnesses, who testified for appellee, placed the speed at from 15 to 20 miles an hour, while the conductor and motorman placed it at from 6 to 9 miles an hour, the latter stating it might have been as much as 10 miles an hour. There was evidence tending to show that when the car struck the automobile, the collision made a noise which was heard for a considerable distance; also that the automobile was carried in front of the car from 90 to 99 feet and then thrown over on the opposite side of the track from which Louden came. It was drizzling rain at the time or just prior to the collision and the tracks were slick from the water. When the motorman first saw the automobile, he says he was some 45 feet from the crossing and it 35 feet therefrom; that he reversed the brake and sanded the track but the car, which was 48 feet long, ran some two car lengths before it could be stopped.

Concerning the question as to whether the servants of appellant rang the gong or gave any other signal in approaching the crossing, there was the controver-

sy among the witnesses which nearly always arises when this question is presented. The proofs on the whole appear to us to have warranted the jury in believing that the car approached Second street at a speed in excess of that permitted by the ordinance of the city and that no signal of its approach was given. If appellant's car, as the evidence seems to prove, went down grade on a street only 20 feet wide at a time when the tracks were slippery from rain and approached a street crossing at an unlawful rate of speed, without giving a signal, the jury were also justified in finding that the car was negligently operated.

The question as to whether Louden was guilty of contributory negligence at the time and just prior to his injury, was one for the jury to determine under proper instructions and the evidence was such as to sustain a finding on their part in favor of appellee in this regard.

Instruction No. 6 given on behalf of appellee was as follows: "The court instructs the jury that while the ordinance introduced in evidence only limited the speed of the car to ten miles an hour, still that does not mean that the defendant might run its cars at that rate of speed at all places and under all circumstances: And in this case if you believe from a preponderance of the evidence, that the rate of speed at which the car in question was being run at the time it struck the deceased, was inconsistent with the lawful and customary use of Second street, then such speed is not authorized by said ordinance."

Appellant complains that this instruction and two others, which contained somewhat similar language, were erroneous, for the reason there was no evidence what the customary use of Second street was and because whether the rate of speed would be lawful or not, would depend upon the facts in evidence, showing a duty arising from the frequent or infrequent use of

the street by the public. Also because the term "lawful use of the street" was nowhere defined in the instruction.

In Chicago City Ry. Co. v. Tuohy, 196 Ill. 410, it is said: "Street cars propelled by electricity cannot be lawfully run at a rate of speed which is incompatible with the lawful and customary use of the highway by others. Here the appellee had as much right to be upon the street as the appellant. A street railway company has no property interest in the street and therefore no right to run its cars at a rate of speed which will interfere with the customary use of the street by others of the public with safety."

In Savage v. C. & J. Elec. Ry. Co., 238 Ill. 392, the court approved an instruction which told the jury "that the defendant must not operate its cars in the streets at a rate of speed incompatible with the lawful and customary use by the public," saying that such was the law. It is further there stated in reference to such instruction "the jury were fully advised as to the degree of care which the deceased was required to exercise in crossing the street and the question whether the rate of speed was inconsistent with the customary use of the street, with such care, was one of fact for the jury. There was no error in giving the instruction."

In this case the jury were fully and repeatedly advised by the instructions as to the degree of care required of appellee's intestate in passing over the crossing in question. There was also proof showing the conditions existing at the crossing and for some distance around it, together with evidence which tended to give some general information concerning the size of the city and the distance of this crossing from the business center.

We are of opinion that the trial court did not err in giving these instructions.

What is above said will also dispose of appellant's objection to instruction No. 5 given for appellee, which told the jury, it was the duty of appellant's servants in charge of the car on approaching the crossing in question, to use care "commensurate with the danger to be anticipated at that point by an ordinarily prudent person."

The final reason urged by appellant why the judgment of the court below should be reversed is that the verdict was excessive.

The complaint of appellant is that the proof did not show Louden contributed to the support of his mother or sister, and therefore only nominal damages could be recovered. There was however some slight evidence in the case tending to show that the deceased contributed to the household expenses. So far as the mother is concerned, however, she belonged to the class known as "lineal kindred" and is therefore presumed in law to have sustained actual damages.

In Huff v. P. & E. Ry. Co., 127 Ill. App. 242, it was held, "that whether or not the deceased had contributed to the support of his next of kin is material only as to his collateral kindred, to-wit, his brothers and sisters; that the rule that actual damages are presumed in cases of lineal kindred such as parent and child, is not limited to minor children but extends to parents and adult children, and that inasmuch as the deceased left a father and mother surviving him, it was error to instruct the jury that appellant was entitled to recover nominal damages only."

It is equally true that where the suit is brought for the benefit of next of kin who are collateral kindred only of the deceased, and have not received pecuniary assistance from him and are not in a situation to require such assistance, then nominal damages only can be recovered. Rhoads v. C. & A. R. R. Co., 227 Ill. 328. The fact that the sister is named with the mother

as one of the next of kin for whose benefit this suit was brought, and that there is very slight evidence of anything contributed by deceased to his sister, should not operate to defeat the recovery of substantial damages in this case, if appellee was otherwise entitled to the same. The question of the apportionment of the damages is one which may be left to the probate court. The damages assessed by the jury in this case were not in the light of the proofs so excessive as to call for a reversal of the judgment on that account. The judgment of the trial court will be affirmed.

*Judgment affirmed.*