The Trust Company of Chicago, Administrator of the Estate of Martin Keane, Deceased, Appellee, v. Guy A. Richardson et al., Trading as Chicago Surface Lines, Appellants.

Gen. No. 39,060.

HALL, J., dissenting.

Opinion filed May 19, 1937.   Rehearing denied June 2, 1937.

FRANK L. KRIETE, CHARLES E. GREEN and ARTHUR J. DONOVAN, all of Chicago, for appellants; JOHN R. GUIL-LIAMS, of Chicago, of counsel.

McKENNA, HARRIS & SCHNEIDER, of Chicago, for appellee; JAMES J. McKENNA and BURRELL J. CRAMER, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This action which is here on appeal by the defendants, was brought under the Injuries Act by the administrator of the estate of Martin Keane, to recover pecuniary loss on behalf of his next of kin occasioned by his death, which occurred on January 1, 1935, by reason of his being struck by a southbound street car on Clark street just south of its intersection with Carmen avenue in Chicago.  The case was tried before a jury, who returned a verdict in the sum of $8,500 for the plaintiff, upon which the court entered judgment on May 8, 1936.

The case was tried upon four charges of negligence alleged in the complaint, which are as follows:

(1) That defendants negligently and carelessly drove, operated and managed said street car;

(2) That defendants negligently and carelessly drove said street car at a speed that was greater than proper, having regard to the traffic and the use of the way;

(3) That defendants negligently and carelessly drove said street car at a dangerous rate of speed; and

(4) That defendants carelessly and negligently failed to bring said street car to a stop until plaintiff's intestate could safely proceed although said plaintiff's intestate was in full view of the driver of the defendants' street car and it was apparent to said driver that the plaintiff's intestate was in a position of peril and would be injured unless the street car was brought to a stop.

The plea of the defendants denied the charges and alleged as a defense that the plaintiff's intestate ran into a street car on the occasion in question, and the defendants further deny that he was in a position of peril at any time on the occasion in question until or immediately before he came in contact with said street car.

From the evidence it appears that the defendants, Guy A. Richardson and Walter J. Cummings, as receivers of the Chicago Surface Lines, are operating electric cars on North Clark street in the city of Chicago, one set of tracks for northbound cars, and one set of tracks for southbound cars, and at the point where the accident occurred, it appears from the evidence that the deceased walked from the west curb on Clark street to about one or two feet from the west rail of the southbound street car track, which was at a point about five feet south of the south crosswalk of Carmen avenue, an intersecting street which runs east and west, where he stopped and looked both ways; that there was a northbound automobile going north in the southbound track because of an obstruction in the northbound track, which obstruction was in the south half of the block; that the automobile approached to a point about 75 feet from plaintiff's intestate; that there was a southbound street car fully lighted and in plain view about half way across Carmen avenue and coming at a

speed of 25 or 35 miles an hour; that plaintiff's intestate was facing sideways toward the street car and that he raised one hand and was struck by the street car, and as a result he, Martin Keane, was injured and died.

It appears that Martin Keane was a young man 27 years of age, in perfect health, vigorous, with good eyesight and hearing and with no deformity. He was not working on New Year's Day, 1935, and left home at about 1:30 in the afternoon "to go out with the boys." He lived in the neighborhood of Clark street and Carmen avenue for some time and was familiar with that street intersection.

Two doors south of Carmen avenue on the west side of Clark street is located what is known as the Moonlight Tavern. The door of the tavern is at the south side of the front end so that it was approximately 50 feet from the south building line of Carmen avenue.

Keane went to this tavern on New Year's afternoon and, according to one of plaintiff's witnesses, was in the tavern for five hours, during which time he did not take a drink. Another of plaintiff's witnesses did not see Keane in the tavern until around six o'clock in the afternoon. This witness said that Keane sat on a stool at the bar during all of the time that he was there greeting his friends this New Year's Day, but did not take a drink. On cross-examination this witness said: "I would not say he did not have a glass of beer during the time."

At approximately seven o'clock in the evening, Keane and the witness Gaither, who had been in the tavern with him for five hours, started to leave the tavern. At the door of the tavern Keane turned back to speak to someone while Gaither proceeded north on the west side of Clark street and was some distance north of Carmen avenue when the accident happened. Gaither did not see Keane after he left him at the door of the tavern and did not see the accident.

A witness named Jones, who had a newsstand at the northeast corner of Clark street and Carmen avenue, went to the Moonlight Tavern about seven o'clock to sell papers, and remained a couple of minutes. He did not know Keane but he saw him walk out of the door of the tavern. The witness came out of the tavern and turned north and saw Keane walking ahead of him diagonally across the sidewalk. Later he said that when he came out of the tavern he first saw Keane standing near the curb in front of the fruit store. The fruit store was between the tavern and Carmen avenue. The witness said that at the time he did not see the street car but that he could hear it. He heard the rumble and knew that the street car was coming; that Clark street is perfectly straight and that if he had looked down the street he could have seen the street car coming from a distance of about two blocks. The witness saw the street car when it was about a car length north of Carmen avenue, and it appears that the car was well lighted; also that there was an arc light at the southwest corner of the intersection of Clark street and Carmen avenue; that no automobiles were parked along the west side of Clark street south of Carmen avenue, nor was there any other obstruction to the view from the curb. All of the witnesses testified that the street car was lighted and Gaither said: "When I saw the street car it was lighted up. I had no trouble in seeing it." When Gaither was half a block north of Carmen avenue and the street car had stopped after the accident, he said, "When I looked at it, I could see the car perfectly plain, it was all lighted up." The testimony of the other witnesses is to the same effect.

There was some snow and ice on the street between the curb and the street car track, but it was not such as to interfere with Keane's walking or running from the curb to the street car track and consequently was

not such as would have prevented him from stepping back from the track.

There was some evidence, as appears from the record, that there was an obstruction and that the street was blocked on the east side below Carmen avenue; that the street car company had men working on the tracks; that there were no cars going north; that the blockade was about 150 feet south of Carmen avenue, and that automobiles had to go around this on the west side to get by the street car.

It also appears from the evidence that the street was not blocked in front of the tavern; that it was not blocked up to a point within 75 feet of the tavern; that no men were working on the street that night except a watchman at the south end; that the street car track was torn up on the east side; that is between the two rails of the northbound track; that there were lights there.

The witness Jones, who had the newsstand on the corner of Clark street and Carmen avenue, further testified there was a northbound automobile in the block while Keane was standing near the track with his hand up; that at the time of this accident, when Keane went across, there was an automobile coming from the south on the west side of the street about 75 feet from Keane; that Keane looked in the direction of that automobile and had just gotten out next to the car tracks just a little before he raised his left hand. This witness also testified that the automobile was in the west tracks for southbound cars; that it had to turn over to get back into the tracks for northbound street cars; that this automobile did not turn as quickly as it could have turned, and he did not see it pass the tavern because the street car stopped there; that the last time he saw the automobile it was about 40 feet south of the tavern traveling north in the southbound track, and that the door of the tavern was about 50 feet south of the corner.

There is some evidence in the record as to the speed of the car at the time it was coming south on Clark street and before it reached Carmen avenue.

When Keane was struck by the corner of the street car he was thrown into the space between the southbound track and the west curb, and when the street car came to a stop he was lying to the west of the car somewhere between the center door and the rear end of the car. No one testified that a northbound automobile ran over his body or that a northbound automobile passed between the street car and the west curb before or after Keane was struck or that a northbound automobile stopped on the south bound track or between the southbound track and the west curb.

The evidence in this case is somewhat contradictory in that the witnesses testified to what they saw from different positions, that is, each from his respective position at the time the accident occurred, and they do not all agree as to the circumstances surrounding the death of plaintiff's intestate, or just what caused the accident.

There is the testimony of the men operating the car at the time in question that the street car stopped on the north side of Carmen avenue and that persons boarded it there; that the car was lighted and the headlight was burning; that after starting, the car attained a speed of approximately 15 miles an hour, which was indicated from the fact that the power was on nine notches, and that when the car was about 15 feet from the entrance to the tavern, a man came running from the west curb toward the east side of the street, and that the man did not look in either direction and had his head down; that he at no time reached the west rail of the southbound track, because his body came in contact with the right hand corner of the car.

The question here is whether the defendants are legally liable under the evidence for the accident which

caused the death of Martin Keane. While the facts are largely in dispute, there is no evidence that the deceased at the time of the accident was under the influence of intoxicants. He was 27 years of age, healthy and vigorous, and had good eyesight. The disputed facts hinge upon the acts of plaintiff's intestate, as well as upon the operation of the street car by defendants' employee. Mr. Keane crossed from the west to the east side of Clark street at a distance of about five feet south of Carmen avenue, and as he approached the car tracks he raised his hand. At that time the street was well lighted, also the interior of the street car, so that Keane's position on the street could be seen by the motorman, and the street car could be seen by Keane as it approached.

There is a dispute as to the speed of the car at the time of the accident. There is evidence that it was traveling from 15 to 35 miles per hour. There is also evidence that as the car approached Carmen avenue, which is a 30-foot street, it stopped to take on passengers. Upon a signal the car started, and as it neared the point of the accident, plaintiff's intestate was in full view of witnesses who so testified. The dispute is as to whether plaintiff's intestate was at the point testified to by witnesses, and whether he ran into the side of the street car while it was in motion. In any event, the motorman was charged with the duty of so operating the car as to have it under control when he saw the position of Keane on the street. It was his duty to comply with the rules governing his operation of the car, which required that he exercise a greater degree of care and watchfulness at a street intersection than he would at other places along the route, and to notice whether the track was clear as the car approached, and to sound the gong as a warning to the people on the street. These were all questions of fact for the jury.

In the case of *Chicago City Ry. Co. v. Tuohy,* 196 Ill. 410, which is similar to the case before this court, the Supreme Court said:

"It is incumbent upon those in control of a street car to exercise a greater degree of care or watchfulness at street intersections than at other places along the route. (Booth on Street Railways, sec. 306; *West Chicago Street Railroad Co. v. McCallum,* 169 Ill. 240; *Chicago City Railway Co. v. Robinson,* 127 id. 9.) Drivers, gripmen and motormen of street cars are obliged at all times to exercise reasonable care in the conduct of their cars, but the requirement of reasonable care imposes upon them a more exacting attention when they approach street crossings in a crowded city where vehicles and pedestrians may always be expected in front of them. 'The failure under such circumstances to ring the bell, sound the gong, or give other proper warning . . . is undoubtedly evidence of negligence to be submitted to a jury under all the circumstances,' whether there is an ordinance requiring such precautions or not. The increase of danger to the public at such crossings demands a corresponding increase of vigilance and energy on the part of such drivers, gripmen and motormen. They ought to notice whether or not the track is clear when they approach such public crossings, and sound the gong as warning. (2 Thompson on the Law of Negligence, secs. 1399–1401.)" This rule was further approved by the Supreme Court in the case of *Heidenreich v. Bremner,* 260 Ill. 439. See also *Chicago City Ry. Co. v. Fennimore,* 199 Ill. 9. Upon the question of contributory negligence, the Supreme Court in its opinion in the case of *Ziraldo v. Lynch Co.,* 365 Ill. 197, said:

"Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly

insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. (*Thomas v. Buchanan,* 357 Ill. 270; *Mueller v. Phelps,* 252 id. 630; *O'Rourke v. Sproul,* 241 id. 576.) A motion to direct a verdict for the defendant preserves for review only a question of law whether from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. (*Brophy v. Illinois Steel Co.,* 242 Ill. 55; *City of Chicago v. Jarvis,* 226 id. 614.) We cannot weigh the evidence to determine, as a matter of fact, whether the plaintiff was guilty of contributory negligence, (*Dukeman v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.,* 237 Ill. 104), and we cannot reject testimony as improbable unless it is contrary to some natural law. *Zetsche v. Chicago, Peoria and St. Louis Railway Co.,* 238 Ill. 240."

Therefore, considering the evidence offered by the plaintiff, it tends to establish that while plaintiff's intestate was near the car tracks in question and near the intersection of Clark street and Carmen avenue on the west side of Clark street, he made a motion with his hand towards the car, and that while his hand was still in the air he was struck by the approaching car, which had stopped at Carmen avenue to take on passengers. At the time of the accident plaintiff's intestate was in plain view of the motorman, and there is evidence in the record that no warning was given, by the sounding of a gong, or otherwise. As we view this evidence, together with that offered by the defense, plaintiff's intestate was not guilty of contributory negligence, as a matter of law. However, these facts were properly before the jury to pass upon.

The further contention is made by the defendants that the jury was prejudiced by inflammatory and im-

proper argument of counsel for the plaintiff. From an examination of this argument it is apparent that the court sustained the objection to what the defendants contend was an improper argument, and overruled other objections and taking the record as it appears, together with the instruction of the court which advised the jury that ''the case should be decided upon the evidence admitted and not in the slightest degree upon evidence which has been excluded by the court; and any statements or arguments made by counsel based upon evidence excluded by the court, if any such statements or arguments have been made, should be disregarded by the jury and should have no weight whatever with you,'' we are of the opinion that the court properly controlled the action of counsel in his argument, and that there were no prejudicial remarks such as would influence the jury.

The defendants also contend that the damages awarded are excessive. It was for the jury to determine the amount of the verdict, and we do not believe under the facts that we would be justified in disturbing the verdict upon the ground that the damages are excessive. The judgment is accordingly affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., concurs.

HALL, J., dissents.