(No. 57539.—

KEVIN MORT, Appellant, v. ALICE I. WALTER,
Appellee.

*Opinion filed October 21, 1983.*

Harold O. Werner and Pree & Pree, of Springfield, for appellant.

Edward W. Huntley, of Gillespie, Cadigan & Gillespie, of Springfield, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

In this personal injury action the circuit court of Sangamon County directed a verdict in favor of defendant, Alice I. Walter. A divided appellate court affirmed in a Rule 23 order (109 Ill. App. 3d 1221), and plaintiff, Kevin Mort, a minor represented by his father and next friend, William Mort, was granted leave to appeal to this court.

The facts concerning the accident which resulted in plaintiff's serious personal injuries are essentially undisputed. On June 15, 1978, plaintiff, who was four years

old, lived with his family in a farmhouse located on the north side of Old Jacksonville Road, approximately seven miles west of Springfield. At about 5:30 p.m., he went with his father to collect the mail. The mailbox was located on the south side of the road almost directly opposite the point where the Morts' driveway joined the road at right angles. William Mort stationed plaintiff approximately four feet away from the road on the blacktop apron which connected the gravel driveway and the road, and instructed him to stay there. Then, after checking to be sure that there was no traffic, the father crossed over to the mailbox, glancing back when he was in the middle of the road to make sure that plaintiff was obeying his instruction. Mr. Mort testified that, upon reaching the mailbox, his attention was focused upon sorting through his mail and that he had his back turned toward plaintiff. Although he had not heard any cars approaching or passing him, when he turned away from the mailbox, he saw plaintiff lying near the spot where he had been standing and defendant's westbound car was approximately 50 feet to the west of plaintiff. It was later determined that plaintiff had come into contact with the right rear side of defendant's car, incurring a compound fracture of his left leg as well as serious internal injuries requiring the removal of his spleen and a portion of one rib.

The testimony indicated that weather conditions at the time of the accident were clear and dry. It was also undisputed that the Mort residence was located on a slightly descending straight section of road and that there were no trees, bushes, crops or other obstructions which would affect a westbound driver's view of the Mort driveway apron. The nearest curve which westbound traffic had to negotiate before passing in front of the Mort residence was approximately one-fifth of a mile to the east. At the scene of the accident, Old Jackson-

ville Road was a 22-foot-wide blacktop road with one lane for driving in each direction. The roadway was bounded by low-lying shoulders of gravel and grass, which were flanked by shallow ditches.

Defendant was called by plaintiff to testify as an adverse witness, and stated that she had driven along the Old Jacksonville Road daily for five or six years prior to the accident and was traveling at 55 miles per hour when she passed the Mort residence on this occasion. Defendant also testified that she had seen William Mort standing at the mailbox but had not seen plaintiff. When asked where she was looking, she replied: "Straight ahead. I was watching the road and the man at the mailbox because I thought maybe he would dart back across." According to defendant, the first indication that she had of plaintiff's presence was when she heard a "thump" at the rear of her car on the right-hand side.

Two passengers were riding with defendant at the time of the accident, but only one of them testified at trial. The trial judge allowed defendant to elicit testimony from Catherine Workman before plaintiff rested, as a matter of convenience to the witness. Mrs. Workman, who was riding in the back seat behind defendant stated that she was reading a book but had looked up as the car passed through the curve and entered the straight section of road which passed in front of the Mort residence. She stated that she saw a man standing by a mailbox and that she then resumed reading until she heard a noise at the rear of the car. Mrs. Workman corroborated defendant's statement as to her speed, estimating that the car was traveling around 55 miles per hour, and she additionally testified that the car had not changed direction or left the roadway at the time of the accident. Plaintiff also introduced photographs depicting the scene of the accident and defendant's car.

In his complaint, plaintiff alleged that defendant was

negligent in failing to observe the roadway in front of her car, failing to keep the car under control, failing to keep a proper lookout for children and pedestrians along the road, failing to decrease speed to avoid colliding with persons along the road, and in failing to stop or decrease speed to avoid hitting the plaintiff despite ample time and opportunity to do so. He also alleged that he was too young to have exercised care in his own behalf. Defendant did not dispute plaintiff's denial of contributory negligence and, in any event, we note that it is conclusively presumed that a child not yet seven years of age cannot be contributorily negligent. (See *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 516-17; *Maskaliunas v. Chicago & Western Indiana R.R. Co.* (1925), 318 Ill. 142, 149-50; *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 872.) When plaintiff had completed his presentation of evidence, defendant moved for a directed verdict, arguing that there was no evidence of how the accident had occurred and that plaintiff had not sustained his burden of proving any of the allegations. The trial judge, after noting that he would not consider Catherine Workman's testimony, granted the defendant's motion, denied plaintiff's motion for a new trial, and entered judgment in favor of defendant.

During oral argument, plaintiff's counsel urged that the appellate court improperly considered Catherine Workman's testimony when it evaluated the propriety of the directed verdict. Although a litigant may move for a directed verdict at the close of all of the evidence (Ill. Rev. Stat. 1977, ch. 110, par. 68.1), the record clearly reveals that defendant intended her motion to be considered at the close of the evidence presented by plaintiff, and it was only because of the unusual circumstances concerning the order in which witnesses were presented that Mrs. Workman's testimony had been heard. The extent of any reliance by the appellate court upon Mrs.

Workman's testimony is unclear, but any consideration of it constituted error in light of the fact that it was not a part of the evidence which formed the basis for the motion and upon which the trial court made its ruling. Accordingly, we will not consider that testimony when examining the record to determine the propriety of the directed verdict.

The primary issue before us is whether the circuit court erred by directing a verdict in defendant's favor. The propriety of a directed verdict must be judged according to the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, where this court stated: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510. See also *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 463; *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 332; *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 566; *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86; *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 157.) Negligence may be established by using either direct or circumstantial evidence (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 85; *Walsh v. Finley* (1972), 51 Ill. 2d 174, 176-77) and, contrary to defendant's assertion, the use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. Instead, circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom (*Walsh v. Finley* (1972), 51 Ill. 2d 174, 176-77; see also *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 436; *Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 697; *Scholle v. Continental National American Group* (1977), 44 Ill. App. 3d 716, 721), and the

facts established by such inferences are considered when an issue is decided as a matter of law or a verdict is directed. See *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 567; *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86.

Plaintiff contends that the evidence presented by him supported an inference that defendant, while watching Mr. Mort, unknowingly drifted off of the right side of the road and struck plaintiff. As defendant points out, the record fails to contain any direct evidence as to how the accident occurred, and the only circumstantial evidence that would support plaintiff's theory of the incident is the fact that the accident occurred. That fact, in and of itself, is ordinarily insufficient to raise an inference of negligence. (See *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 153; *Moss v. Wagner* (1963), 27 Ill. 2d 551, 555.) Plaintiff also attacks the directed verdict on the ground that the evidence reveals that defendant was negligent because she failed to see plaintiff, who was in a place where he would be plainly visible. The allegations of plaintiff's complaint clearly encompassed the theory that defendant negligently failed to maintain a proper lookout and her resulting failure to slow her vehicle to the point where she might have avoided the collision caused plaintiff's injuries. Because the *Pedrick* rule requires us to evaluate the propriety of a directed verdict in terms of all of the evidence then before the court, we consider it appropriate to examine the merits of this contention.

This court has often held that knowledge of hazardous conditions must be imputed to litigants when the danger of one's actions would be apparent through the exercise of "reasonable precaution and circumspection." (*Carter v. Winter* (1965), 32 Ill. 2d 275, 284, *cert. denied* (1965), 382 U.S. 825, 15 L. Ed. 2d 70, 86 S. Ct. 56. See also *Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, 535-36; *Dee v. City of Peru* (1931),

343 Ill. 36, 42; *Greenwald v. Baltimore & Ohio R.R. Co.* (1928), 332 Ill. 627, 632.) The rule has been aptly phrased by our appellate court: "[O]ne cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see." (*Pantlen v. Gottschalk* (1959), 21 Ill. App. 2d 163, 170.) Although that rule has apparently only been used in the context of proving contributory negligence, we are unable to conceive of any reason why it should not also apply for the purpose of proving a plaintiff's allegation of negligence. (*Cf. Blue v. St. Clair Country Club* (1955), 7 Ill. 2d 359, 366 ("Negligence may result in a variety of ways. One may not escape liability by refusing to recognize the danger").) In both instances, an essential question is whether the party has failed to do that which a reasonably careful person would do or has done something which a reasonably careful person would not do. (Compare *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, with *Long v. City of New Boston* (1982), 91 Ill. 2d 456.) Accordingly, we find no basis to support defendant's contention that the rule should be available only to prevent a defendant against whom other evidence of negligence has been offered from disclaiming liability by testifying that he looked but did not see.

In our judgment the evidence in this case is not such that a verdict for plaintiff could never stand, and we believe the trial court erred in directing a verdict. Other jurisdictions, in factually related cases, have considered it appropriate to submit the issue of liability to the jury. (See *Rodgers v. Carter* (1966), 266 N.C. 564, 146 S.E.2d 806; *Thomas v. Gates* (Ky. 1966), 399 S.W.2d 689; *Williams v. Bluebird Cab Co.* (1949), 189 Va. 402, 52 S.E.2d

868; *Gonzales v. Xerox Corp.* (La. App. 1976), 329 So. 2d 818. See also *Schneider v. Macari* (1975), 111 Ariz. 483, 533 P.2d 540; *Burrell v. Philadelphia Electric Co.* (1970), 438 Pa. 286, 265 A.2d 516; *Bean v. Butler* (1959), 155 Me. 106, 151 A.2d 271.) In *Sheley v. Guy* (1976), 63 Ill. 2d 544, a case remarkably similar to this on its facts, a majority of this court sustained a verdict for the plaintiff. While the author of this opinion joined the *Sheley* dissenters, he did so because the manner in which the majority assumed the accident there occurred seemed a physical impossibility. There seems, however, a significant difference here. The undisputed testimony places the plaintiff some four feet north of the edge of the road as defendant approached. The father was standing on the opposite side of the road. Defendant testified that her attention was focused on the father because she thought he might start back across the road, and she had not seen plaintiff at all. In these circumstances a jury could reasonably conclude that plaintiff should have been aware of the presence of the young child standing in plain view, whose precipitous darting across the highway would appear more likely than similar action by its father, and have reduced her speed or moved to the middle of the road, or both, before driving between them, and that her failure to do so was the proximate cause of plaintiff's injury. Nor would it, in our judgment, have been unreasonable for the jury to have concluded that, since defendant's car was moving at a speed of some 68+ feet per second, plaintiff must have commenced moving toward the car while he was still within defendant's range of vision, had she been looking, and could have taken evasive action. Consequently, we cannot say that the evidence, when viewed in the light most favorable to plaintiff, so overwhelmingly favors defendant that "no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*

(1967), 37 Ill. 2d 494, 510. See also *Larson v. Harris* (1967), 38 Ill. 2d 436.

For the reasons stated, the judgment of the circuit court of Sangamon County and the judgment of the appellate court, affirming the circuit court, are reversed, and the cause is remanded for a new trial.

*Judgments reversed;*
*cause remanded.*