FRIDAE TONEY, a Minor by and through her Mother and Next Friend, Plaintiff-Appellee, v. JOSE M. MAZARIEGOS *et al.*, Defendants-Appellants.

First District (5th Division)   No. 86—2094

Opinion filed February 5, 1988.

400

Ronald S. Cope, Peter M. Rosenthal, and Judith N. Kolman, all of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellants.

Gregory R. Sun, of Chicago, for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendants Jose M. Mazariegos and the Village of Maywood appeal from a $20,010 judgment entered for Fridae Toney (hereinafter plaintiff) following a bench trial in a personal injury action brought on plaintiff's behalf by her mother. The plaintiff, then five years old, sustained injuries after she walked out into the street from in front of an ice cream truck and came into contact with defendant Mazariegos' moving vehicle. On appeal defendants contend: (1) the trial court's finding of negligence by defendant Mazariegos was contrary to the manifest weight of the evidence and plaintiff's own negligence was the sole proximate cause of her injuries; (2) with the adoption of comparative negligence in Illinois, children under seven should no longer be held to be incapable of negligence, so that plaintiff's negligence should have been taken into consideration in determining damages; (3) the trial court acted without authority in increasing the damages awarded from $15,010 to $20,010 in response to plaintiff's motion for a new trial on damages; (4) the trial court erroneously considered medical expenses in its damages calculation; and (5) plaintiff's post-trial motion for leave to file a third-party complaint for contribution should have been granted.

We affirm.

At trial the following pertinent testimony was adduced. Plaintiff's sister, Shenea Toney, who was 10 at the time of the accident and 14 at trial, testified that the accident occurred on May 9, 1982, in the 1400 block of South Second in Maywood. Shenea and plaintiff had crossed to the east side of the street to buy ice cream. As they stood at the curb by the ice cream truck Shenea sent the plaintiff back across the street for more money. Shenea did not see the collision, but heard tires screeching and then saw the plaintiff lying in the middle of the street.

Defendant Mazariegos, a Maywood police officer, was initially called by plaintiff as an adverse witness and then as a witness in his own behalf. Mazariegos testified that the accident occurred at about

noon. He had been on patrol in his squad car since 8 a.m. As he drove north on Second Avenue he observed an ice cream truck parked 75 yards ahead on the east side of the street. The day was clear and sunny, and there was no traffic between his vehicle and the truck. Mazariegos testified that he expected the presence of children and was looking for them as he approached the truck. However, he also testified that as part of his patrol duty he would look around the area as he drove. The speed limit was 20 miles per hour, but he was driving 15.

Mazariegos first became aware of the plaintiff when she hit the right front fender of his vehicle as he began to pass the ice cream truck. He therefore did not apply his brakes until after the collision. The officer called for an ambulance and also summoned other Maywood police officers.

The plaintiff testified that she had begun to walk back across the street to obtain more money when she was hit by the police car. She admitted that she did not first look for traffic, even though her mother had previously instructed her to do so. She also stated that she did not see the police car before the collision.

Tina Olison lived three houses away from the Toneys at the time of the accident. From her front porch she saw the ice cream truck parked three houses north of her house. When she first saw the police car it was two houses south of her. As the car passed her house she saw Office Mazariegos looking at her. She then saw the plaintiff walk into the street from in front of the ice cream truck, which was facing north. When the plaintiff was five or six feet away from the car and three or four feet into the street and away from the truck, the plaintiff made a half circle. The car, which Olison estimated was traveling 25 or 30 miles per hour, then struck the plaintiff. On cross-examination Olison admitted that although she saw the officer looking at her as he passed her house she did not know where he was looking when the accident occurred.

Plaintiff's mother testified that the plaintiff was hospitalized for 13 days, including four days in intensive care, for treatment of her fractured jaw. Her mouth was wired for six to eight weeks. During this period plaintiff could not eat solid food, was restricted in her ability to play with other children, and her speech was affected. Plaintiff's father identified a hospital bill paid in connection with plaintiff's treatment and four other medical bills were introduced into evidence by stipulation of the parties.

At the close of all the evidence and following final argument by counsel, the court found that defendant Mazariegos' negligence was

the proximate cause of the accident. The parties had earlier stipulated that at the time of the accident the officer was acting within the scope of his employment with Maywood. Thus the trial court entered a judgment against both defendants in the amount of $15,010, an amount which the court subsequently increased to $20,010.

## 1

■ We find no merit to defendants' contention that the trial court's finding of negligence by defendant Mazariegos was contrary to the manifest weight of the evidence. Where children may reasonably be expected to be in the vicinity, a motorist, although still held to a standard of ordinary care, must exercise greater care for the safety of those children than he would for adults. (*Stowers v. Carp* (1961), 29 Ill. App. 2d 52, 172 N.E.2d 370; *Cooper v. Miller* (1978), 67 Ill. App. 3d 349, 384 N.E.2d 919.) Because of the unpredictable conduct of children, their probable presence in the vicinity is deemed to constitute a warning to the motorist to exercise such care. (*Stowers v. Carp* (1961), 29 Ill. App. 2d 52, 172 N.E.2d 370.) In this cause defendant Mazariegos himself testified that as he approached the ice cream truck he anticipated the presence of children in the area. Defendants note that there was evidence that the plaintiff entered the street without looking and that defendant Mazariegos was traveling at a rate less than the speed limit. But even where a motorist was traveling at a speed below the speed limit and a child darted out into traffic, a question of fact may remain as to whether the motorist was traveling too fast for conditions and failed to properly perform his duty of care toward children in the vicinity. *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624.

Defendant Mazariegos testified that the day was clear and sunny and there were no obstructions between him and the truck. A witness to the accident testified that as the officer drove past her, three houses from the collision, she saw the officer looking at her on her porch. She also testified that at a distance three or four feet away from the ice cream truck and five or six feet away from Mazariegos' car, the plaintiff made a half circle, thus apparently attempting to turn back, when the collision occurred. Yet defendant Mazariegos admitted that he did not see the plaintiff until the impact. Based on these facts the trial court, acting as the trier of fact, concluded that Mazariegos had failed to keep a proper lookout and was driving too fast for conditions. We do not find these conclusions to be contrary to the manifest weight of the evidence and thus we will not disturb them on appeal.

## 2

■ In ruling for the plaintiff, the trial court rejected defendants' contention that plaintiff's contributory negligence should be taken into account. (The court also found that in any event it would not find that plaintiff had been contributorily negligent were it to consider that issue.) On appeal defendants again contend that with the adoption of comparative negligence in Illinois, the courts should abolish the Illinois rule that children under the age of seven are incapable of negligence as a matter of law. In adopting the Illinois rule our supreme court stated that it was utilizing the analogy of the common law rule exempting infants under the age of seven from criminal responsibility. (*Chicago City Ry. Co. v. Tuohy* (1902), 196 Ill. 410, 63 N.E. 997.) That exemption persists by statute in Illinois, although the age has been increased to 13. (Ill. Ann. Stat., ch. 38, par. 6—1 (Smith-Hurd 1972) (and Committee Comments thereto).) The Illinois Supreme Court has continued to follow the Illinois rule even though its criminal antecedent has been modified and even though comparative negligence has been substituted for contributory negligence. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18.) Although *Walter* did not expressly consider the effect of comparative negligence on the Illinois rule, as an intermediate reviewing court we will not disturb a rule that our supreme court has so recently reaffirmed. Accordingly, we find that the trial court correctly declined to consider the issue of plaintiff's contributory negligence.

## 3

■ Defendants also contend that they are immunized from liability by virtue of section 2—204 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—204). That statute provides in pertinent part that public employees acting within the scope of their employment are not liable for injuries caused by another person. The statute has been construed as being intended to bar liability based on *respondeat superior* and thus would appear to have no applicability here. (*Clark v. City of Chicago* (N.D. Ill. 1984), 595 F. Supp. 482, 487.) In any event, our affirmance of the trial court's finding that defendant Mazariegos' negligence caused plaintiff's injuries would preclude application of this provision in this cause.

## 4

■ We next consider defendants' contention that the trial court erred in increasing the amount of the award to $20,010 in response to

plaintiff's motion for a new trial on damages. Defendants cite only to cases involving limitations on a judge's power to enlarge a jury verdict. (See *Carr v. Miner* (1866), 42 Ill. 179; *Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 409 N.E.2d 287.) But in this bench trial it was the trial court which had in the first instance determined damages. Furthermore, although defendants contend that plaintiff did not request such an increase, instead only requesting a new trial on damages, the half sheet contained in the record specifically states that the court had sustained plaintiff's motion to increase the judgment. Although defendants also contend that plaintiff failed to establish the inadequacy of the original award, defendants' failure to include the transcript of the hearing at which the increase was granted precludes us from considering this contention.

## 5

■ For the first time on appeal defendants contend that because this action was not brought by plaintiff's parents, who were responsible for their child's medical expenses, the court erred in considering such expenses in computing damages to be awarded to plaintiff. But evidence of medical expenses was admitted at trial without objection from defendants. Indeed, defendants stipulated to the admission of some of the plaintiff's medical bills. In final argument to the trial court, plaintiff's attorney cited these medical expenses in arguing the issue of damages. Again defendants failed to object. Nor did they object when the trial court referred to these expenses in announcing its award. Because defendants failed to raise this issue in the trial court, they have waived the matter on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

## 6

■ In a post-trial motion filed within 30 days of the entry of judgment in this cause, defendants sought leave to file a third-party complaint for contribution against plaintiff's mother and against the company that owned the ice cream truck. That motion was heard and denied as untimely by Judge Trafelet, who was not the trial judge. Defendants contend that it was error to deny this motion. Section 5 of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 305) provides:

> "Enforcement. A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action."

In *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939, the Illinois Supreme Court construed this section as requiring that when there is a pending action a contribution claim must be brought by counter-claim or third-party claim in that action. Furthermore, the court noted that this construction, requiring the parties to litigate these claims in one suit, would save court time and attorney fees. In *Carter v. Chicago & Illinois Midland Ry. Co.* (1986), 140 Ill. App. 3d 25, 487 N.E.2d 1267, the court held that the *Laue* construction of the statute required that the contribution claim should be determined concurrently with the determination of liability in the underlying claim. Based on these cases we find that the motion to file a third-party contribution claim, made after the underlying issue of liability had already been determined in a trial, was properly denied as untimely.

For the reasons set forth in this opinion the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY and PINCHAM, JJ., concur.