Joseph **ALLENSWORTH**,
Plaintiff–Appellant,

v.

**GENERAL MOTORS CORPORATION**
and **United Auto Workers Union,**
**Local 662,** Defendants–Appellees.

No. 89–3738.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1990.
Decided Oct. 2, 1991.

Lorine Brown Regulus, Indianapolis, Ind., on briefs, for plaintiff-appellant.

Nora L. Macey (argued), Barry Macey, Segal & Macey, Wendell R. Tucker, Gregory L. Padgett (argued), Baker & Daniels, Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Joseph Allensworth brought suit against his employer and his union representative alleging that they discriminated against him based upon his race in violation of 42 U.S.C. § 1981. Finding Allensworth's claims to be foreclosed by *Patterson v. McLean Credit Union*, 491 U.S. 164, 109

S.Ct. 2363, 105 L.Ed.2d 132 (1989), the district court granted summary judgment in favor of both defendants. We affirm.

## I.

Joseph Allensworth is an African–American journeyman pipefitter employed by General Motors (GM) at its Delco–Remy Division plant (Delco–Remy) in Anderson, Indiana. He is a member of Local 662 of the United Auto Workers Union (the UAW), the exclusive bargaining agent of production and maintenance employees at the plant. Allensworth became a journeyman pipefitter by completing an apprentice training program jointly administered by GM and the UAW. The apprentice program at Delco–Remy typically requires four years of study and training. To become a journeyman, the apprentice must successfully complete all required coursework and must compile the required number of shop hours actually working in the trade. An apprentice who fails satisfactorily to perform these requirements is subject to removal from the program.

Allensworth's tenure in the Delco–Remy apprentice program was not typical: it took him five years to complete the program because he was removed two times for academic reasons. Allensworth joined Delco–Remy's apprentice program as an apprentice pipefitter on September 19, 1983. Less than two years later, on June 18, 1985, Allensworth was removed from the apprentice program because he twice failed a required course—Math–2. According to local practice, an apprentice who did not maintain a C average or failed the same course twice would be removed. In this case the Apprentice Committee agreed, however, to permit Allensworth to return to the program if he retook and passed Math–2. On January 13, 1986, after he took and passed Math–2, Allensworth was accordingly reinstated in the apprentice program. His reinstatement was made subject to the condition that he would be permanently removed if he failed to meet the requirements of the program in the future.

In May 1987, Allensworth was removed from the apprentice program for the second time because he failed another required course—Basic Air Conditioning Repair (BACR). He was removed even though he had successfully maintained a C average and had never taken (or failed) BACR before. Delco–Remy appears to have no formal policy or practice for dealing with this type of situation, namely an academic failure following a conditional reinstatement. According to the Apprentice Committee, however, the integrity of the apprentice program would have been compromised if Allensworth had not been removed for failing a required course after he had already been removed once and conditionally reinstated. The Apprentice Committee resolved, therefore, to remove Allensworth from the program, but it also agreed to consider reinstatement again if he successfully completed the BACR course by January 1988. In addition, Allensworth was offered work in the Job Bank with payment at his apprentice rate of pay. Although he declined the Job Bank offer because it would require him to do production work, Allensworth received GM–UAW supplemental unemployment benefits amounting to ninety-five percent of his hourly pay.

Allensworth's claims of racial discrimination fall into two categories. First, he alleges that he was harassed because of his race from the beginning of his apprenticeship. He maintains that he was the butt of racial jokes and other forms of verbal abuse and that he was struck on the head by an unidentified co-worker. He also claims that, unlike white apprentices, he was not provided quarterly progress reports for one year and was required to work by himself because journeymen refused to work with him. Allensworth presented these complaints to the Union in February 1987. In response, the Union convened a meeting between Allensworth and the employees whom he accused of racial harassment, all in the presence of a company representative. Both the Union's and the company's representatives informed the employees in clear terms that their alleged behavior would not be tolerat-

ed and that they should "knock-off" whatever was going on. At the close of the meeting, Allensworth and his colleagues shook hands and agreed to forget about the matter. Allensworth concedes that the racial harassment ceased after this meeting.

Allensworth's second complaint involves what he perceives to be racial discrimination surrounding his second removal from the apprentice program. In June 1987, Allensworth brought this charge to the Union's attention and requested relief. He was referred to Local 662's Civil Rights Committee. Although the Civil Rights Committee made no finding of racial discrimination on the part of the Apprentice Committee, it recommended that the Union demand Allensworth's reinstatement to the apprentice program. The Union accordingly negotiated with GM and obtained management's consent to reinstate Allensworth conditioned upon his agreement to retake BACR, complete his shop hours and withdraw pending charges against GM. But Allensworth rejected this offer. He also elected not to pursue contractual or internal union procedures to set aside his removal from the apprentice program. The Union, for its part, did not take any further action with respect to Allensworth's complaint because Union officials deemed the settlement fair and believed that there was little chance of obtaining a more favorable one.

In November 1987, after Allensworth submitted a transcript showing that he had taken and passed BACR at another school, the Apprentice Committee reinstated him to the apprentice program. Allensworth returned to work, completed his shop hours and became a journeyman pipefitter in February 1988. When he became a journeyman, Allensworth's seniority was reduced by thirteen months to account for the two periods—in 1985 and again in 1987—when he was removed from the apprentice program. This adjustment was required by paragraph 137(b) of the GM–UAW National Agreement, which provides that the skilled trades seniority date of an apprentice upon graduation must be adjusted to include only the calendar days spent by the apprentice in the program.

In December 1988, Allensworth filed a complaint against GM and the UAW alleging that they discriminated against him based upon his race in violation of 42 U.S.C. § 1981. GM filed a motion to dismiss the amended complaint and the UAW filed for summary judgment. Treating both motions as motions for summary judgment, the district court entered judgment in favor of GM and the UAW. The district court found that Allensworth failed to establish a *prima facie* case of discrimination against the Union because there was no evidence that the Union represented him differently from similarly situated white employees or that the Union's conduct as his bargaining representative was motivated by racial animus. The district court similarly ruled against Allensworth on his claim against the company. Relying upon *Patterson*, the court held that Allensworth's claim against GM was not actionable under the terms of section 1981 because it did not involve racial discrimination in the creation of his employment contract. The court observed that Allensworth failed to demonstrate any "divergence in the explicit terms" of the contract. It reasoned that the racial harassment and discrimination which he allegedly suffered, moreover, amounted in essence to post-formation conduct not covered by section 1981.

On appeal, Allensworth advances just two arguments. First, he concedes that there was no *overt* divergence in the terms of his employment contract with GM. He contends, however, that GM's failure to intervene or prevent the racial harassment and discrimination to which he was subjected from the beginning of his apprenticeship demonstrates that the company *implicitly* refused to enter into the apprentice program with him on racially neutral terms. Second, he maintains that the UAW's failure to pursue a grievance after his second removal from the apprentice program amounts to racial discrimination in the enforcement of contracts proscribed by section 1981 even after *Patterson*.

## II.

We review the district court's entry of summary judgment *de novo*, drawing all reasonable inferences in favor of the non-moving party, here Allensworth. Summary judgment must be entered whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). No genuine issue of material fact exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11.

Allensworth complains of race discrimination in violation of 42 U.S.C. § 1981, which guarantees to all persons "the same right ... to make and enforce contracts ... as is enjoyed by white citizens." In *Patterson*, 491 U.S. 164, 109 S.Ct. 2363, the Supreme Court narrowly defined the scope of section 1981, confining its protection to "conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through the legal process." *Id.* at 179–80, 109 S.Ct. at 2374–75. Because the statute literally embraces only the right to make and to enforce contracts, the Court held that it "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations." *Id.* at 176, 109 S.Ct. at 2372.

The first of the rights secured by section 1981, the right to make contracts, prohibits only a racially-based refusal to enter into a contract or an offer to make a contract on discriminatory terms. As the Supreme Court has emphasized, it does not, however, "extend as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established." *Id.* at 177, 109 S.Ct. at 2373. "Such postformation conduct," the Court wrote, "does not involve the right to make a contract, but rather implicates the performance of established contract obli-

gations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII." *Id.*

The second of the statutory guarantees, the right to enforce contracts, proscribes racial discrimination that infects the legal process or impedes nonjudicial modes of adjudication regarding the enforcement of contract rights. *See id.* It also extends to discrimination by certain private entities, such as labor unions, in enforcing the terms of a contract because such entities bear explicit responsibility for processing grievances, pressing claims and representing members in disputes over the terms of the labor contract. *See id.*

### A. Claims Against GM

In order to state a section 1981 claim post–*Patterson*, Allensworth must show that GM refused altogether to make an employment contract with him or that it refused to enter into an employment contract on racially neutral terms. But here GM obviously did not refuse to enter into an employment contract with Allensworth, for it enrolled him in its apprentice program and allowed him to become a journeyman pipefitter. Allensworth has failed to present sufficient evidence, moreover, that the company refused to enter into a contract with him on racially neutral terms. Indeed, the facts that he has set forth do not indicate that the company's treatment of him differed in any substantial respect from its treatment of white employees. Allensworth cannot challenge the adjustment in his seniority for that adjustment was made due to time spent out of the apprentice program in accordance with the explicit terms of his employment contract. Nor can Allensworth complain that either removal from the apprentice program was discriminatory. Allensworth was removed in 1985 for failing Math–2 twice. This comports entirely with local policy. Allensworth's removal for the second time in 1987 after he failed just one course also does not amount to unfair treatment or discrimination in light of the fact that he could have been removed permanently but

was instead granted a second chance to complete the apprentice program.

■ The only evidence of racial discrimination that Allensworth has produced is the harassment that he allegedly suffered early in his apprenticeship. But Allensworth cannot bootstrap what is no more than a challenge to the allegedly racially discriminatory conditions of his employment into a section 1981 claim that GM refused to enter into an employment contract with him on racially neutral terms. *See id.* at 184, 109 S.Ct. at 2376 ("The fact that racial harassment is 'severe or pervasive' does not by magic transform a challenge to the conditions of employment, not actionable under § 1981, into a viable challenge to the employer's refusal to make a contract."). Although a persistent pattern of racial harassment may provide evidence that a divergence in the terms of a particular contract is attributable to racial animus, a plaintiff cannot bring suit under section 1981 based solely upon allegations of post-formation racial harassment. If, for example, a potential employee is offered a contract to perform a certain task for less money than others doing similar work, evidence of racial harassment in the workplace may demonstrate that the employer, at the time of formation, was unwilling to enter into a contract on nondiscriminatory terms. *See id.* But Allensworth's claims against GM must fail because there is no evidence of a refusal to contract or a divergence in the terms of his employment contract and the alleged incidents of racial harassment of which he complains constitute post-formation conduct that is no longer actionable under section 1981.

## B. Claims Against the UAW

■ Allensworth's charges against the UAW are similarly flawed, for there is, if anything, even less evidence of racial discrimination on its part. A union's deliberate failure to press grievances involving race discrimination is itself discrimination in the enforcement of contract rights that is actionable under section 1981. *See Patterson,* 491 U.S. at 177, 109 S.Ct. at 2373 (reaffirming that section 1981's prohibition

upon discrimination in the enforcement of contractual obligations extends to discrimination by unions); *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (holding union liable under section 1981 for following a deliberate policy of never including claims of racial discrimination in its grievances while pursuing thousands of other grievances). But the UAW did not ignore Allensworth's complaints of racial harassment. Instead, it attempted to redress the problem by calling a meeting and reprimanding the allegedly guilty parties. Allensworth professed to be satisfied with the results of that mediation process. He cannot now complain that the UAW failed to act upon his complaints of racial harassment or acted in a discriminatory fashion.

The UAW did not, moreover, disregard Allensworth's charge that his second removal from the apprentice program was racially discriminatory. On the contrary, it authorized an investigation by the Civil Rights Committee and adopted the Committee's recommendation. On Allensworth's behalf, the UAW accordingly negotiated a fair settlement with GM. Allensworth could have employed internal union appeals procedures if he found that settlement unpalatable. The UAW's decision not to pursue a grievance after Allensworth rejected a reasonable settlement and declined to avail himself of internal union appeals procedures does not amount to the sort of discrimination in the enforcement of contracts that is actionable under section 1981.

### III.

Allensworth's claims against GM are squarely foreclosed by *Patterson,* 491 U.S. 164, 109 S.Ct. 2363, which held that section 1981 proscribes discrimination only in the making and enforcement of contracts and does not extend to racial harassment as a condition of employment. Although a discriminatory failure to enforce the terms of his labor contract would be actionable under section 1981, Allensworth's claims against the UAW must also fail because he has not adduced sufficient evidence that he was treated in a discriminatory fashion to

survive summary judgment. The district court's entry of judgment in favor of both defendants is, therefore, AFFIRMED.