Allen J. CHOE, Administrator,
etc., Plaintiff,

v.

Paul Frank ASHDOWN,
et al., Defendants.

No. 90 C 7327.

United States District Court,
N.D. Illinois, E.D.

Dec. 4, 1992.

Edward H. MacCabe, Maureen A. McGuire, Gorham, Metge, Bowman & Hourigan, Chicago, IL, for plaintiff.

Andrew Kopon, Jr., Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Allen J. Choe ("Choe"), administrator of the estate of his deceased daughter Janette ("Janette"), has brought this diversity-of-citizenship action against Paul Frank Ashdown ("Ashdown") and American Transport, Inc. ("American"),[1] seeking damages for Janette's wrongful death as well as for personal injuries that she had sustained in the same occurrence. Defendants have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, and the motion has been fully briefed.[2] For the reasons stated in this memorandum opinion and order, defendants' motion is denied.

### Background[3]

On May 2, 1990 Janette left an after-school tutoring session and headed for home on her bicycle (Choe Dep. 22–23). Truck driver Ashdown waited at the intersection of Dundee Road as Janette traveled west on Dundee through the crosswalk (Ashdown Dep. 81). He watched her angle southwest out of the intersection and onto a sidewalk running parallel to Sanders Road (id. 83–85). Ashdown then turned left onto Sanders Road and traveled south 250 to 300 feet (id. 89–91). As he then turned right into the parking lot of the

Sanders Court shopping center, an observer (Sue Foster) screamed for him to stop (id. 108). He did so, but not before the wheels of his semi had run over Janette (Foster Dep. 20, 34). Janette was dead when police officers arrived on the scene (Officer Terrance Ryan Dep. 16).

Choe, Janette's father and the administrator of her estate, has brought this two-count action pursuant to the Illinois Wrongful Death Act (Ill.Rev.Stat. ch. 70, ¶ 1) and the Illinois Survival Act (Ill.Rev. Stat. ch. 110½, ¶ 27–6). Both counts charge that Janette's death was the result of Ashdown's negligence. But defendants' summary judgment motion maintains that a dearth of evidence and eyewitness testimony would render any jury verdict in Choe's favor a matter of mere speculation on the issues of negligence and proximate cause, so that summary judgment is proper.

### Rule 56 Standard

Only a portion of the familiar Rule 56 formulation requires attention here—that negating summary judgment if any material (that is, outcome-determinative) fact is in dispute. As *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) put it:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary judgment.

And in that respect, this Court must resolve factual disputes in Choe's favor in a generous manner (*Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 ("evidence of the nonmovant is to be believed, and all justifiable inferences must be drawn in his favor"); accord, *Allensworth v. General Mo-*

---

1. Choe has alleged an agency relationship between codefendants Ashdown and American. That has been denied in the Answer, but the nature of defendants' relationship is not at issue for purposes of the current motion.

2. Each side has filed the factual statement required by this District Court's General Rule ("GR") 12(m) and 12(n) in conjunction with Rule 56 motions. Defendants' statement is cited

as "D. 12(m)" and Choe's responsive statement as "P. 12(n)."

3. Because of the nature of the current motion, it seems preferable to defer any detailed discussion of the facts until this opinion's later substantive discussion. All that will be essayed at this stage is a skeletal statement of Choe's claims.

*tors Corp.*, 945 F.2d 174, 178 (7th Cir.1991) (speaking in terms of "all reasonable inferences")).

### Source of Law

■ In this diversity case, this Court looks first to Illinois' choice-of-law rules (*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). In tort cases Illinois courts follow the Restatement's "most significant contacts" approach, requiring the consideration of four factors (*Ingersoll v. Klein*, 46 Ill.2d 42, 47–48, 262 N.E.2d 593, 596 (1970)):

(a) The place where the injury occurred. (b) The place where the conduct occurred. (c) The domicile, nationality, place of incorporation and place of business of the parties. (d) The place where the relationship of the parties is centered.

■ Three of those four factors (the injury, the conduct and the parties' relationship) point to Illinois. Those elements plus Choe's Illinois domicile heavily outweigh the only non-Illinois elements: Ashdown's Minnesota citizenship and American's dual Michigan citizenship under 28 U.S.C. § 1332(c)(1). It is thus unnecessary to resort to the presumptive importance that is accorded to the place of injury under the most-significant-contacts test (*In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 616 (7th Cir.1981)). Illinois substantive law plainly applies.

4. Choe asserts that Ashdown operated his vehicle negligently in one or more of these respects (paraphrased from the Second Amended Complaint as amended):
  1. failing to yield the right-of-way to Janette while she was in a crosswalk or crosswalk area, in violation of Ill.Rev.Stat. ch. 95½, ¶ 11–1002(a);
  2. failing to slow down or stop his vehicle to yield the right-of-way to Janette while she was in a crosswalk or crosswalk area, in violation of the same statute;
  3. failing to maintain a proper lookout for Janette when Ashdown turned into the driveway and across the crosswalk (Choe cites no statutory provision in that respect); and
  4. failing to exercise due care to avoid colliding with Janette while she was operating a bicycle, and failing to sound his horn and

### Negligence

To defeat the current summary judgment motion, Choe must provide evidence sufficient for a jury to find a duty of care owed to Janette by Ashdown, a breach of that duty and an injury proximately resulting from the breach (*Miklos v. Caliendo*, 161 Ill.App.3d 132, 138, 112 Ill.Dec. 639, 643, 514 N.E.2d 35, 39 (2d Dist.1987)). Those components of Choe's negligence claims will be addressed in turn.

### 1. Duty of Care[4]

■ Drivers of motor vehicles in Illinois owe a duty of care to pedestrians and cyclists, with express emphasis on that duty as owed to children. In that respect Section 11–1003.1 states:

[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian, or any person operating a bicycle or other device propelled by human power and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person.

■ When children are known or should be known to be present, the Illinois cases thus teach that due care requires a special and higher degree of vigilance (*Toney v. Mazariegos*, 166 Ill.App.3d 399, 403, 116 Ill.Dec. 820, 822–23, 519 N.E.2d 1035, 1037–38 (1st Dist.1988)). *Stowers v. Carp*, 29 Ill.App.2d 52, 64–65, 172 N.E.2d 370, 376 (2d Dist.1961) (relied on in *Toney* and other

exercise proper precaution upon seeing a child, in violation of *id.* ¶ 11–1003.1 ("Section 11–1003.1").
By its terms the first-cited statute appears to create a duty to pedestrians only in crosswalks. Janette was not in a crosswalk when Ashdown hit her, and Choe has made no argument for reading the provision to extend to pedestrians on sidewalks crossing driveways. Instead Choe concentrates on the duty described under the last-cited statute. Illinois cases treat the duty to keep a lookout (Choe's third contention) as subsumed under the special vigilance that a driver must exercise on seeing a child (*Wallace v. Weinrich*, 87 Ill.App.3d 868, 873, 42 Ill.Dec. 721, 726, 409 N.E.2d 336, 341 (5th Dist.1980)). This opinion therefore focuses on the duty created by Section 11–1003.1 in analyzing the existence and scope of Ashdown's duty to Janette.

cases) has expressed that special obligation in these terms:

> The operator of a motor vehicle who, under the particular circumstances presented, is or should reasonably be cognizant of the proximity of children must exercise ordinary care to discover their presence upon or near his vehicle and ordinary care under the circumstances to avoid inflicting injury upon them; it is ordinarily necessary to exercise greater care for the safety of young children than for adults possessing normal, mature faculties; children's conduct is unpredictable and one operating a motor vehicle under those circumstances should anticipate their thoughtlessness and impulsiveness; their presence or probable presence is in itself a warning; if the driver has knowledge or should, under the circumstances, have had knowledge of their presence he may in a particular case be liable even though he did not see the child in time to prevent the injury; ordinarily whether a driver should, under the circumstances, have been alerted to the necessity of looking for the presence of children is one of fact for the jury to solve as well as whether the duty, if it arose, has been properly performed.

Indeed, that special duty of care frequently attaches despite the driver's not having seen the child. Thus *Toney* upheld a judgment against a police officer even though his squad car struck a child whom he did not see—a child who walked out into the street from in front of a parked ice cream truck (166 Ill.App.3d at 403, 116 Ill.Dec. at 823, 519 N.E.2d at 1038). Because the officer had admitted that he "anticipated the presence of children in the area," he was held to have "failed to keep a proper look-out" (*id.*). And again in *Stowers* the defendant truck driver had not seen a child before his truck hit the child, but the driver knew that children played in the area in which he had been loading his vehicle, and he had seen children playing around and near the truck, some 200 feet away from where the accident occurred (29 Ill.App.2d at 65, 172 N.E.2d at 376). That justified the trial judge's refusal to direct a verdict for the driver, for there was enough evidence to support the inference of negligence in failing to keep a proper lookout (*id.* at 66, 172 N.E.2d at 377).

■ It really follows a fortiori from such cases that Choe has presented evidence from which a jury could reasonably conclude that Ashdown owed Janette a duty of care. Ashdown's deposition testimony was that he saw Janette riding her bicycle across Sanders Road and then cutting out of the crosswalk in a southwesterly direction onto the sidewalk that ran over the driveway of a gas station. As already stated, Ashdown's turn into the Sanders Court parking lot was 250 to 300 feet beyond the intersection (the point where Ashdown testified he had last seen Janette) (D. 12(m) ¶ 9). Given Ashdown's knowledge of Janette's presence and the mobility of a bicycle rider, coupled with the special duty of care owed by drivers of motor vehicles to children under Illinois law, it takes no great stretch of the facts (taken in the required light—that is, with all reasonable inferences favorable to Choe) to find the existence of a genuine issue of material fact as to whether Ashdown should have expected that Janette might ride south on the sidewalk leading to the driveway of Sanders Court. That would of course have put her in harm's way, and in fact the ultimate in grievous harm—her death—befell her.

### 2. *Breach of Duty*

■ Choe must also provide evidence sufficient to permit the reasonable inference that Ashdown breached his duty to Janette. Illinois cases have recognized "that the mere fact that a vehicle has struck a pedestrian does not give rise to a presumption of negligence on the part of the driver" (*Miklos,* 161 Ill.App.3d at 138, 112 Ill.Dec. at 643, 514 N.E.2d at 39). At the same time, a defendant's duty is not necessarily discharged by his uncontradicted testimony that "he looked … but saw nothing" (*Wallace,* 87 Ill.App.3d at 874, 42 Ill.Dec. at 726, 409 N.E.2d at 341)—and importantly, that holding involved an injury to a child. And even in the non-child context "[i]t is … well established by the law in Illinois, that one cannot look with unsee-

ing eye and not see the danger which he could have seen by the proper exercise of his sight" (*Hicks v. Donoho*, 79 Ill.App.3d 541, 544, 35 Ill.Dec. 304, 306, 399 N.E.2d 138, 140 (5th Dist.1980), quoting an earlier Third Appellate District case).

Although Ashdown insists that he looked in all directions before making his turn, so that he was assertedly not negligent in failing to see Janette, he also testified that he did not give Janette "much attention" after she turned onto the sidewalk (Ashdown Dep. 85). Further, he testified that he did not specifically look at the sidewalk when he turned into the shopping center drive (*id.* 99, 103). As before, this case closely tracks such cases as *Toney* and *Stowers* in reflecting—at a minimum—a genuine issue of fact as to whether under those circumstances Ashdown failed to keep a proper lookout for Janette as he made his turn.

■ Ashdown urges that he has a right to summary judgment because no evidence has been presented as to "how or why the decedent found herself under the trailer" (D.R.Mem. 2). Because various scenarios could be advanced to explain how the accident happened, Ashdown contends that taking the matter to trial would merely be an exercise in speculation (*id.*). But such cases as *Wallace*, 87 Ill.App.3d at 874, 42 Ill.Dec. at 726, 409 N.E.2d at 341 hold that the driver's lack of knowledge of a child's location before impact is irrelevant, because the driver owes a duty to maintain a *continuous* lookout. Indeed, the Illinois Supreme Court has taught expressly—

again in the context of a child injured by an automobile, this time where the driver *never* saw the child—not only (1) that circumstantial evidence will suffice to establish negligence whenever there is a reasonable inference that might be drawn to that effect, but also (2) that the same rule applies even in those instances in which the circumstances might support more than one logical conclusion (*Mort v. Walter*, 98 Ill.2d 391, 396, 75 Ill.Dec. 228, 231, 457 N.E.2d 18, 21 (1983)).[5]

### 3. *Proximate Cause*

■ Proximate cause ordinarily poses an issue of fact for the jury (*Castorena v. Browning-Ferris Industries of Illinois*, 217 Ill.App.3d 328, 335, 160 Ill.Dec. 309, 313, 577 N.E.2d 185, 189 (2d Dist.1991)). That is not always so, though—as *Wilson v. Bell Fuels, Inc.*, 214 Ill.App.3d 868, 873–74, 158 Ill.Dec. 406, 410, 574 N.E.2d 200, 204 (1st Dist.1991) says:

Proximate cause becomes a question of law, however, when the material facts are undisputed and there can be no difference in judgment of reasonable men as to the inferences to be drawn from them.

■ Ashdown's R.Mem. 3–4 contends that because there is no eyewitness testimony as to how Janette came to be under the wheels of the trailer, any finding that Ashdown's actions were a proximate cause of the accident would be a matter of conjecture.[6] But the very fact that she tragically

---

**5.** As Choe's Mem. 12 points out, many Illinois cases factually similar to this one have sustained verdicts for plaintiffs or overturned summary judgment for defendants where, while there were no witnesses to the accident, the trier of fact could reasonably conclude that the defendant should have been aware of the presence of a young child and should have taken steps to avoid hitting the child (see, e.g., *Mort*, 98 Ill.2d at 399, 75 Ill.Dec. at 232, 457 N.E.2d at 22; *Sheley v. Guy*, 63 Ill.2d 544, 546, 348 N.E.2d 835, 836 (1976); *Toney*, 166 Ill.App.3d at 403, 116 Ill.Dec. at 823, 519 N.E.2d at 1038; *Miklos*, 161 Ill.App.3d at 139, 112 Ill.Dec. at 644, 514 N.E.2d at 40; *Wallace*, 87 Ill.App.3d at 874, 42 Ill.Dec. at 724–25, 409 N.E.2d at 339–40; *Stowers*, 29 Ill.App.2d at 66–67, 172 N.E.2d at 377).

**6.** Ashdown purports to find support for that proposition in cases holding that a lack of evidence of how the injury occurred precluded a finding of proximate cause: *Wilson; Bakkan v. Vondran*, 202 Ill.App.3d 125, 147 Ill.Dec. 475, 559 N.E.2d 815 (1st Dist.1990); and *Gentile v. Kehe*, 165 Ill.App.3d 802, 117 Ill.Dec. 476, 520 N.E.2d 827 (1st Dist.1987). But all those cases are inapposite, for in each of them the plaintiff had presented no evidence that any action by or condition created by the defendant caused the plaintiff's injuries. Here it is unquestioned that the wheels of Ashdown's truck ran over Janette.

ended up there,[7] coupled with the already-discussed inferences that can permissibly be drawn from witnesses' testimony, means that the issue of proximate cause must also be presented to a jury.[8]

### Conclusion

This is a classic case for resolution by a factfinder, not by a judge via summary judgment. Material issues of fact abound, and reasonable inferences would surely support a verdict in Choe's favor. Ashdown's motion is denied, and this action is set for a status hearing at 4 p.m. December 11, 1992 to discuss setting the case for an early trial (if it is not capable of resolution through settlement).

---

7. Officer Terrance Ryan testified that, in his opinion, the wheel of Janette's bike struck the right rear wheel of the cab (where there was a dirt mark matching in size the bicycle's front tire, Ryan Dep. 45, 48–49), and that he found blood and tissue on the left rear wheels of the trailer (*id.* 50). In addition, Sue Foster testified that she saw Janette's head under the trailer (Foster Dep. 19), and then she saw the truck hit Janette again while Janette was trying to get up and while Ms. Foster was screaming and waving at Ashdown to get his attention (*id.* 20, 26–28).

8. Ashdown has presented evidence that Janette's vision was 20/200 and she was not wearing her prescription eyeglasses at the time of the accident (D. 12(m) ¶¶ 39–41), although he also somewhat mysteriously insists (R.Mem. 4) that comparative fault is not at issue on his summary judgment motion. Under Illinois' modified comparative negligence provision, a plaintiff whose fault is more than 50% of the proximate cause of the injury may not recover in tort (Ill.Rev.Stat. ch. 110, ¶ 2–1116). But Illinois case law provides that a child between the ages of 7 and 14 is presumptively incapable of contributory negligence (*Pellegrini v. Chicago, R.I. & P. R.R.,* 91 Ill.App.3d 1091, 1093, 47 Ill.Dec. 610, 611, 415 N.E.2d 615, 616 (1st Dist.1980)). That presumption may be rebutted by proof that "the particular child, based on h[er] age, mental capacity, intelligence and experience, was accountable for h[er] actions" (*id.*). Here Ashdown has made no attempt to rebut the presumption. But even if he had, the issue of contributory negligence would properly remain a matter for the jury (*id.;* see also *Johnson v. Colley,* 111 Ill.2d 468, 475, 95 Ill.Dec. 832, 835, 490 N.E.2d 685, 688 (1986) (contributory negligence "is rarely decided as a matter of law" rather than as a question for the jury)).